HOFFMAN and wife, Plaintiffs, v. RED OWL STORES, INC., and another, Defendants. [Two appeals.] *

*February 5—March 2, 1965.*

* Motion for rehearing denied, with costs, on April 27, 1965.

684

688

For the defendants there was a brief by *Benton, Bosser, Fulton, Menn & Nehs* of Appleton, and oral argument by *David L. Fulton.*

For the plaintiffs there was a brief by *Van Hoof, Van Hoof & Wylie* of Little Chute, and oral argument by *Gerard H. Van Hoof.*

Currie, C. J. The instant appeal and cross appeal present these questions:

(1) Whether this court should recognize causes of action grounded on promissory estoppel as exemplified by sec. 90 of Restatement, 1 Contracts?

(2) Do the facts in this case make out a cause of action for promissory estoppel?

(3) Are the jury's findings with respect to damages sustained by the evidence?

*Recognition of a Cause of Action Grounded
on Promissory Estoppel.*

Sec. 90 of Restatement, 1 Contracts, provides (at p. 110) :

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

The Wisconsin Annotations to Restatement, Contracts, prepared under the direction of the late Professor William H. Page and issued in 1933, stated (at p. 53, sec. 90) :

"The Wisconsin cases do not seem to be in accord with this section of the Restatement. It is certain that no such proposition has ever been announced by the Wisconsin court and it is at least doubtful if it would be approved by the court."

Since 1933, the closest approach this court has made to adopting the rule of the Restatement occurred in the recent case of *Lazarus v. American Motors Corp.* (1963), 21 Wis. (2d) 76, 85, 123 N. W. (2d) 548, wherein the court stated :

"We recognize that upon different facts it would be possible for a seller of steel to have altered his position so as to effectuate the equitable considerations inherent in sec. 90 of the Restatement."

While it was not necessary to the disposition of the *Lazarus Case* to adopt the promissory-estoppel rule of the Restatement, we are squarely faced in the instant case with that issue. Not only did the trial court frame the special verdict on the theory of sec. 90 of Restatement, 1 Contracts, but no other possible theory has been presented to or discovered by this court which would permit plaintiffs to recover. Of

other remedies considered that of an action for fraud and deceit seemed to be the most comparable. An action at law for fraud, however, cannot be predicated on unfulfilled promises unless the promisor possessed the present intent not to perform. *Suskey v. Davidoff* (1958), 2 Wis. (2d) 503, 507, 87 N. W. (2d) 306, and cases cited. Here, there is no evidence that would support a finding that Lukowitz made any of the promises, upon which plaintiffs' complaint is predicated, in bad faith with any present intent that they would not be fulfilled by Red Owl.

Many courts of other jurisdictions have seen fit over the years to adopt the principle of promissory estoppel, and the tendency in that direction continues.[8] As Mr. Justice McFADDIN, speaking in behalf of the Arkansas court, well stated, that the development of the law of promissory estoppel "is an attempt by the courts to keep remedies abreast of increased moral consciousness of honesty and fair representations in all business dealings." *Peoples National Bank of Little Rock v. Linebarger Construction Co.* (1951), 219 Ark. 11, 17, 240 S. W. (2d) 12. For a further discussion of the doctrine of promissory estoppel, see 1A Corbin, Contracts, pp. 187 *et seq.,* secs. 193–209; 3 Pomeroy's Equity Jurisprudence (5th ed.), pp. 211 *et seq.,* sec. 808b; 1 Williston, Contracts (Jaeger's 3d ed.), pp. 607 *et seq.,*

[8] Among the many cases which have granted relief grounded upon promissory estoppel are: *Goodman v. Dicker* (D. C., D. C. 1948), 169 Fed. (2d) 684; *Drennan v. Star Paving Co.* (1958), 51 Cal. (2d) 409, 333 Pac. (2d) 757; *Van Hook v. Southern California Waiters Alliance* (1958), 158 Cal. App. (2d) 556, 323 Pac. (2d) 212; *Chrysler Corp. v. Quimby* (1958), 51 Del. 264, 144 Atl. (2d) 123, 144 Atl. (2d) 885; *Lusk-Harbison-Jones, Inc., v. Universal Credit Co.* (1933), 164 Miss. 693, 145 So. 623; *Feinberg v. Pfeiffer Co.* (Mo. App. 1959), 322 S. W. (2d) 163; *Schafer v. Fraser* (1955), 206 Or. 446, 290 Pac. (2d) 190, 294 Pac. (2d) 609; *Northwestern Engineering Co. v. Ellerman* (1943), 69 S. D. 397, 10 N. W. (2d) 879.

sec. 140; Boyer, Promissory Estoppel: Requirements and Limitations of the Doctrine, 98 University of Pennsylvania Law Review (1950), 459; Seavey, Reliance Upon Gratuitous Promises or Other Conduct, 64 Harvard Law Review (1951), 913; Annos. 115 A. L. R. 152, and 48 A. L. R. (2d) 1069.

The Restatement avoids use of the term "promissory estoppel," and there has been criticism of it as an inaccurate term. See 1A Corbin, Contracts, p. 232 *et seq.*, sec. 204. On the other hand, Williston advocated the use of this term or something equivalent. 1 Williston, Contracts (1st ed.), p. 308, sec. 139. Use of the word "estoppel" to describe a doctrine upon which a party to a lawsuit may obtain affirmative relief offends the traditional concept that estoppel merely serves as a shield and cannot serve as a sword to create a cause of action. See *Utschig v. McClone* (1962), 16 Wis. (2d) 506, 509, 114 N. W. (2d) 854. "Attractive nuisance" is also a much-criticized term. See concurring opinion, *Flamingo v. Waukesha* (1952), 262 Wis. 219, 227, 55 N. W. (2d) 24. However, the latter term is still in almost universal use by the courts because of the lack of a better substitute. The same is also true of the wide use of the term "promissory estoppel." We have employed its use in, this opinion not only because of its extensive use by other courts but also since a more-accurate equivalent has not been devised.

Because we deem the doctrine of promissory estoppel, as stated in sec. 90 of Restatement, 1 Contracts, is one which supplies a needed tool which courts may employ in a proper case to prevent injustice, we endorse and adopt it.

*Applicability of Doctrine to Facts of this Case.*

The record here discloses a number of promises and assurances given to Hoffman by Lukowitz in behalf of Red

Owl upon which plaintiffs relied and acted upon to their detriment.

Foremost were the promises that for the sum of $18,000 Red Owl would establish Hoffman in a store. After Hoffman had sold his grocery store and paid the $1,000 on the Chilton lot, the $18,000 figure was changed to $24,100. Then in November, 1961, Hoffman was assured that if the $24,100 figure were increased by $2,000 the deal would go through. Hoffman was induced to sell his grocery store fixtures and inventory in June, 1961, on the promise that he would be in his new store by fall. In November, plaintiffs sold their bakery building on the urging of defendants and on the assurance that this was the last step necessary to have the deal with Red Owl go through.

We determine that there was ample evidence to sustain the answers of the jury to the questions of the verdict with respect to the promissory representations made by Red Owl, Hoffman's reliance thereon in the exercise of ordinary care, and his fulfilment of the conditions required of him by the terms of the negotiations had with Red Owl.

There remains for consideration the question of law raised by defendants that agreement was never reached on essential factors necessary to establish a contract between Hoffman and Red Owl. Among these were the size, cost, design, and layout of the store building; and the terms of the lease with respect to rent, maintenance, renewal, and purchase options. This poses the question of whether the promise necessary to sustain a cause of action for promissory estoppel must embrace all essential details of a proposed transaction between promisor and promisee so as to be the equivalent of an offer that would result in a binding contract between the parties if the promisee were to accept the same.

Originally the doctrine of promissory estoppel was invoked as a substitute for consideration rendering a gratuitous

promise enforceable as a contract. See Williston, Contracts (1st ed.), p. 307, sec. 139. In other words, the acts of reliance by the promisee to his detriment provided a substitute for consideration. If promissory estoppel were to be limited to only those situations where the promise giving rise to the cause of action must be so definite with respect to all details that a contract would result were the promise supported by consideration, then the defendants' instant promises to Hoffman would not meet this test. However, sec. 90 of Restatement, 1 Contracts, does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee. Rather the conditions imposed are:

(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

(2) Did the promise induce such action or forbearance?

(3) Can injustice be avoided only by enforcement of the promise?[2]

We deem it would be a mistake to regard an action grounded on promissory estoppel as the equivalent of a breach-of-contract action. As Dean Boyer points out, it is desirable that fluidity in the application of the concept be maintained. 98 University of Pennsylvania Law Review (1950), 459, at page 497. While the first two of the above-listed three requirements of promissory estoppel present issues of fact which ordinarily will be resolved by a jury, the third requirement, that the remedy can only be invoked where necessary to avoid injustice, is one that involves a policy decision by the court. Such a policy decision necessarily embraces an element of discretion.

---

[2] See Boyer, 98 University of Pennsylvania Law Review (1950), 459, 460. "Enforcement" of the promise embraces an award of damages for breach as well as decreeing specific performance.

We conclude that injustice would result here if plaintiffs were not granted some relief because of the failure of defendants to keep their promises which induced plaintiffs to act to their detriment.

*Damages.*

Defendants attack all the items of damages awarded by the jury.

The bakery building at Wautoma was sold at defendants' instigation in order that Hoffman might have the net proceeds available as part of the cash capital he was to invest in the Chilton store venture. The evidence clearly establishes that it was sold at a loss of $2,000. Defendants contend that half of this loss was sustained by Mrs. Hoffman because title stood in joint tenancy. They point out that no dealings took place between her and defendants as all negotiations were had with her husband. Ordinarily only the promisee and not third persons are entitled to enforce the remedy of promissory estoppel against the promisor. However, if the promisor actually foresees, or has reason to foresee, action by a third person in reliance on the promise, it may be quite unjust to refuse to perform the promise. 1A Corbin, Contracts, p. 220, sec. 200. Here not only did defendants foresee that it would be necessary for Mrs. Hoffman to sell her joint interest in the bakery building, but defendants actually requested that this be done. We approve the jury's award of $2,000 damages for the loss incurred by both plaintiffs in this sale.

Defendants attack on two grounds the $1,000 awarded because of Hoffman's payment of that amount on the purchase price of the Chilton lot. The first is that this $1,000 had already been lost at the time the final negotiations with Red Owl fell through in January, 1962, because the remaining $5,000 of purchase price had been due on October 15, 1961. The record does not disclose that the lot owner had

foreclosed Hoffman's interest in the lot for failure to pay this $5,000. The $1,000 was not paid for the option, but had been paid as part of the purchase price at the time Hoffman elected to exercise the option. This gave him an equity in the lot which could not be legally foreclosed without affording Hoffman an opportunity to pay the balance. The second ground of attack is that the lot may have had a fair market value of $6,000, and Hoffman should have paid the remaining $5,000 of purchase price. We determine that it would be unreasonable to require Hoffman to have invested an additional $5,000 in order to protect the $1,000 he had paid. Therefore, we find no merit to defendants' attack upon this item of damages.

We also determine it was reasonable for Hoffman to have paid $125 for one month's rent of a home in Chilton after defendants assured him everything would be set when plaintiff sold the bakery building. This was a proper item of damage.

Plaintiffs never moved to Chilton because defendants suggested that Hoffman get some experience by working in a Red Owl store in the Fox River Valley. Plaintiffs, therefore, moved to Neenah instead of Chilton. After moving, Hoffman worked at night in an Appleton bakery but held himself available for work in a Red Owl store. The $140 moving expense would not have been incurred if plaintiffs had not sold their bakery building in Wautoma in reliance upon defendants' promises. We consider the $140 moving expense to be a proper item of damage.

We turn now to the damage item with respect to which the trial court granted a new trial, *i.e.,* that arising from the sale of the Wautoma grocery-store fixtures and inventory for which the jury awarded $16,735. The trial court ruled that Hoffman could not recover for any loss of future profits for the summer months following the sale on June 6, 1961, but that damages would be limited to the difference between

the sales price received and the fair market value of the assets sold, giving consideration to any goodwill attaching thereto by reason of the transfer of a going business. There was no direct evidence presented as to what this fair market value was on June 6, 1961. The evidence did disclose that Hoffman paid $9,000 for the inventory, added $1,500 to it and sold it for $10,000 or a loss of $500. His 1961 federal income-tax return showed that the grocery equipment had been purchased for $7,000 and sold for $7,955.96. Plaintiffs introduced evidence of the buyer that during the first eleven weeks of operation of the grocery store his gross sales were $44,000 and his profit was $6,000 or roughly 15 percent. On cross-examination he admitted that this was gross and not net profit. Plaintiffs contend that in a breach-of-contract action damages may include loss of profits. However, this is not a breach-of-contract action.

The only relevancy of evidence relating to profits would be with respect to proving the element of goodwill in establishing the fair market value of the grocery inventory and fixtures sold. Therefore, evidence of profits would be admissible to afford a foundation for expert opinion as to fair market value.

Where damages are awarded in promissory estoppel instead of specifically enforcing the promisor's promise, they should be only such as in the opinion of the court are necessary to prevent injustice. Mechanical or rule-of-thumb approaches to the damage problem should be avoided. In discussing remedies to be applied by courts in promissory estoppel we quote the following views of writers on the subject:

"Enforcement of a promise does not necessarily mean Specific Performance. It does not necessarily mean Damages for breach. Moreover the amount allowed as Damages may be determined by the plaintiff's expenditures or change of position in reliance as well as by the value to him of the

promised performance. Restitution is also an 'enforcing' remedy, although it is often said to be based upon some kind of a rescission. In determining what justice requires, the court must remember all of its powers, derived from equity, law merchant, and other sources, as well as the common law. Its decree should be molded accordingly." 1A Corbin, Contracts, p. 221, sec. 200.

"The wrong is not primarily in depriving the plaintiff of the promised reward but in causing the plaintiff to change position to his detriment. It would follow that the damages should not exceed the loss caused by the change of position, which would never be more in amount, but might be less, than the promised reward." Seavey, *Reliance on Gratuitous Promises or Other Conduct,* 64 Harvard Law Review (1951), 913, 926.

"There likewise seems to be no positive legal requirement, and certainly no legal policy, which dictates the allowance of contract damages in every case where the defendant's duty is consensual." Shattuck, *Gratuitous Promises—A New Writ?,* 35 Michigan Law Review (1936), 908, 912.[3]

At the time Hoffman bought the equipment and inventory of the small grocery store at Wautoma he did so in order to gain experience in the grocery-store business. At that time discussion had already been had with Red Owl representatives that Wautoma might be too small for a Red Owl operation and that a larger city might be more desirable. Thus Hoffman made this purchase more or less as a temporary experiment. Justice does not require that the damages awarded him, because of selling these assets at the behest of defendants, should exceed any actual loss sustained measured by the difference between the sales price and the fair market value.

---

[3] For expression of the opposite view, that courts in promissory-estoppel cases should treat them as ordinary breach of contract cases and allow the full amount of damages recoverable in the latter, see note, 13 Vanderbilt Law Review (1960), 705.

Since the evidence does not sustain the large award of damages arising from the sale of the Wautoma grocery business, the trial court properly ordered a new trial on this issue.

*By the Court.*—Order affirmed. Because of the cross appeal, plaintiffs shall be limited to taxing but two thirds of their costs.