EHRET COMPANY, a corporation,
Plaintiff-Appellant,

v.

EATON, YALE & TOWNE, INC., an
Ohio Corporation,
Defendant-Appellee.

No. 74–1836–7.

United States Court of Appeals,
Seventh Circuit.

Argued June 5, 1975.

Decided Sept. 11, 1975.
Rehearing and Rehearing En Banc
Denied Nov. 12, 1975.

James M. Goff, Harold C. Hirshman, Chicago, Ill., for Eaton, Yale & Towne.

Jerome A. Frazel, Jr., D. Kendall Griffith, Chicago, Ill., for Ehret.

Before FAIRCHILD, Chief Judge, SWYGERT, Circuit Judge, and CAMPBELL, Senior District Judge.*

FAIRCHILD, Chief Judge.

This appeal raises questions concerning the interpretation of an exclusive sales contract and the application of the parol evidence rule and promissory estoppel. It also raises the question whether the trial judge abused his discretion by offering a remittitur and granting a new trial. Jurisdiction is founded on diversity. All parties to this appeal have accepted Illinois law as controlling.

The plaintiff, Ehret Company, acted as a manufacturer's sales representative for the defendant, Eaton Company, in the Milwaukee and Chicago territories until the termination of their 1966 contract. This termination was effected by notice in compliance with the "Duration of Agency" clause and took effect on September 30, 1968.

There was evidence that the defendant's products, worm gears and lubricating systems, required the plaintiff to engage in "Development Work" of up to ten years prior to the consummation of a sale. It was necessary, during this presale development, for the plaintiff to engineer, design and adapt the defendant's products into either the customers' finished product or into the customers' own manufacturing equipment. Before signing the 1965 contract, Mr. Ehret objected to the "Duration of Agency" clause which reads:

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

## 12. *Duration of Agency*

This Sales Agreement may be altered by our mutual consent and may be terminated by either of us upon thirty (30) days' notice in writing. In the event of cancellation of this Agreement or abridgment of the territory herein covered, no commission will be paid on any orders which have not been properly received, in writing, and accepted by us in writing before the termination of the Agreement or abridgment of the territory, or on orders which purchasers will not accept delivery of and pay for within three (3) months from the date of cancellation of the Agreement or abridgment of the territory.

His objections were raised in an April 28, 1965 letter to the General Sales Manager of Eaton Company, Mr. Witzenburg. Mr. Ehret showed concern for the possibility that Eaton Company could cancel the contract after Ehret Company had expended considerable time and money in procuring a sale, but before an order was placed, and also that orders placed prior to termination may not be shipped within 90 days.

On April 29, 1965, Eaton Company responded, with a letter from Mr. Witzenburg declining to change the contract, stating:

It is true in the event of cancellation by either party, our company would not be obligated to pay a commission on orders that were received before the date of final cancellation but were not released for shipment three months after cancellation. However, in those few cases where the contract has been cancelled by us we have always been much more liberal than provided for in the contract.

The normal procedure is to allow full credit for all orders received within 30 days after final cancellation date, provided that they resulted from quotations made prior to the date of cancellation and if released for shipment within five months of the date of cancellation. In fact, in two cases, we have extended that protection to orders received under the same circumstances but shipped within a period of one year after cancellation.

Neither you nor we expect that the new contracts will be cancelled by either one of us, so that this discussion is probably academic only. However, we cannot alter the terms of the contract—the same contract must exist with you as with all of our other representatives and in the very unlikely event of cancellation, you will have to rely on receiving extremely fair treatment.

After receiving Mr. Witzenburg's letter, Ehret Company entered into the Commission Sales Agreement containing the "Duration of Agency" clause on April 30, 1965.

On March 31, 1966, Eaton, Yale and Towne, Inc., formerly Eaton Company, sent a letter to the Ehret Company requesting that a new contract be signed reflecting the defendant's name change. This new contract, signed and dated June 2, 1966, contained the same "Duration of Agency" clause as the 1965 contract. In addition, the new contract contained an integration clause which stated that, "Upon its receipt, it will constitute an entire Agreement between us as of the date set forth above [January 1, 1966.] This Agreement cancels all prior Sales Agreements between us, including the latest one dated May 1, 1965."

On August 28, 1968, Eaton, Yale and Towne, Inc. sent a letter to Ehret Company terminating their 1966 agreement as to both the Chicago and Milwaukee territories, effective September 30, 1968. In this letter the defendant expressed its intent to construe literally the "Duration of Agency" clause stating, "In effecting this cancellation, full credit will be given your office for all acceptable orders dated September 30, 1968, and before, provided they are shipped prior to December 31, 1968." Later, and after negotiation, Eaton, Yale and Towne, Inc. agreed to pay Ehret Company on all orders re-

ceived prior to termination regardless of when shipped. Eaton tendered this amount, $51,000.00, to Ehret Company, of which $44,000.00 was accepted.

The plaintiff contends that it is entitled to better treatment than described in the "Duration of Agency" clause, (and better than Eaton actually extended) relying on Mr. Witzenburg's April 29, 1965 letter which stated that, "you [Ehret Company] will have to rely on receiving extremely fair treatment."

The defendant's motion for summary judgment was denied. The plaintiff's motion for partial summary judgment was granted, determining that defendant was estopped from asserting the "Duration of Agency" clause of the contracts to limit commissions. At trial, the defendant's motion for directed verdict was denied and the jury's verdict awarded plaintiff $546,000.00. The defendant's motion for judgment N.O.V. was denied and the defendant's motion for a new trial was granted after the plaintiff refused a remittitur of $408,119.25. The jury's verdict awarded $120,000.00 to the plaintiff in the second trial.

The plaintiff appeals challenging the order setting aside the first jury verdict and the granting of a new trial. On its appeal the defendant contends that the 1966 contract on its face is a complete representation of the agreement between the parties, and that in any event the plaintiff failed to prove damages based on the meaning of the "extremely fair treatment" letter.

■ The trial judge correctly held, as a matter of law, that the defendant was estopped from asserting the "Duration of Agency" clause of the 1965 and 1966 contracts. As stated in *Dill v. Widman,* 413 Ill. 448, 109 N.E.2d 765, 769 (1952):

The general rule is that where a party by his statements or conduct leads another to do something he would not have done but for the statements or conduct of the other, the one guilty of the expressions or conduct will not be allowed to deny his utterances or acts to the loss or damage of the other party. The party claiming the estop-

pel must have relied upon the acts or representations of the other and have had no knowledge or convenient means of knowing the true facts. Fraud is a necessary element but it is not essential that there be a fraudulent intent. It is sufficient if a fraudulent effect would follow upon allowing a party to set up a claim inconsistent with his former declarations.

■ All of the elements necessary to form an estoppel are present in this case. The plaintiff was induced to sign the 1965 and 1966 contracts only in reliance on the defendant's representation that it would not enforce the "Duration of Agency" clause, but would give "extremely fair treatment" in the unlikely event of termination. The plaintiff also relied on a letter, which preceded the 1966 contract, from Eaton Company stating that a new contract must be signed to reflect Eaton Company's name change. If the defendant were allowed to disclaim its representations after receiving the benefits therefrom, this would have the fraudulent effect that an estoppel was designed to prevent. Usually the question of estoppel is for the jury except where, as in this case, the facts presented leave but one inference; then it becomes a question of law. *Bituminous Casualty Corp. v. City of Harrisburg,* 315 Ill.App. 243, 42 N.E.2d 971 (1942).

The Milwaukee territory was not mentioned in the written contracts, but evidence was adduced that the parties understood it to be covered by the same terms and conditions as the written Chicago agreement. The question was submitted to the jury, which found that the "extremely fair treatment" letter was also applicable to the Milwaukee contract and territory. This finding was not contested on appeal; therefore both territories are treated similarly for the purpose of this order.

■ The question of damages was submitted to the jury on the theory of a possible breach of a contract to give the plaintiff extremely fair treatment. Support for the treatment as an enforcible

promise of the promise which, as a result of plaintiff's reliance, creates an estoppel is supported by Restatement, Contracts, § 90 and Restatement 2d, Contracts, § 90 (Tent. Draft No. 2, 1965). Following this view, admission of the "extremely fair treatment" letter is not in conflict with the parol evidence rule as the defendant contends. An estoppel is an equitable remedy which has its own independent force.

■ We now turn to the interpretation of the contract, specifically the "Duration of Agency" clause, as modified by the "extremely fair treatment" letter. The meaning of the term "extremely fair treatment" is neither plain nor clear, but is susceptible to numerous interpretations. Parol evidence is always permitted to assist in determining the meaning and effect of a contract term from the intent of the parties. *Ortman v. Stanray Corp.,* 437 F.2d 231 (7th Cir. 1971). This is especially true where the words used, by their very nature, are ambiguous. The trial court properly allowed the introduction of the extrinsic evidence, not to vary or contradict the written contract, but to explain a term which became part of the agreement by means of an estoppel.

The quantum of damages was dependent on the jury's determining the meaning of the phrase "extremely fair treatment," whether the plaintiff received "extremely fair treatment," and if not, what would compensate the plaintiff for commissions or allowances it would have received if it had been given "extremely fair treatment." The defendant contends that there was no evidence presented to support the jury's verdict. We disagree. There was sufficient evidence to establish that it took up to ten years for the plaintiff to develop a customer prior to an order being placed. It was this concern of the plaintiff that prompted the defendant's promise of "extremely fair treatment" and it was on this basis that the jury awarded damages.

■ The defendant's contention that the 1966 contract superseded its representation of "extremely fair treatment" we find to be without merit under the circumstances because of defendant's representation of the limited.purpose of the 1966 contract.

■ We recognize that there is authority in jurisdictions other than Illinois for the proposition that the promise which becomes the basis for the estoppel is not to be enforced as a promise, and that damages, if awarded, "should be only such as in the opinion of the court are necessary to prevent injustice." *Hoffman v. Red Owl Store, Inc.,* 26 Wis.2d 683, 701, 133 N.W.2d 267, 276 (1964); *see generally,* 28 Am.Jur.2d, Estoppel and Waiver § 49 (1966). We think, however, that in the circumstances of this case, this latter theory produces the same result as determining damages under the contract. Giving the estoppel only the effect of depriving defendant of its right to limit commissions due after termination to those computed according to the 1966 contract, and seeking only an amount of damage needed to produce an equitable result, plaintiff would be entitled to compensation, reasonably determined, for the time and effort it expended as the defendant's sales agent without being afforded sufficient opportunity to recoup from the venture. *Fargo Glass and Paint Co. v. Globe American Corp.,* 161 F.2d 811, 813 (7th Cir. 1947); *Burton v. Hitachi America, Ltd.,* 504 F.2d 721 (7th Cir. 1974).

■ The plaintiff's computation of damages is based on Eaton's sales figures for the five years after termination. Of this amount Ehret contends that it is entitled to the "development credit" portion of the commissions from customers that it had serviced while acting as Eaton's representative. The plaintiff borrowed the term "development credit" from the defendant's agreement which provided for the allocation of commission where one representative worked on a project for which an order was placed outside his territory. The representative who performed the "development work," described above, was entitled to 80% of the sales commission for the gear prod-

ucts and 60% of the sales commission for the lubrication products. For the five year period the portion of commissions equivalent to the development credit is equal to $910,000.00. The jury's verdict in the first trial was three-fifths of this amount, or $546,000.00. The trial judge held that a three year development credit was excessive and offered a remittitur which would bring the figure to less than one year over the commission already paid. Plaintiff elected not to remit. The basis for the jury award at the second trial is not readily apparent. It was less than the amount offered by the court.

Under the circumstances, we find no fault in using the Eaton Company's sales figures and the "development credit" concept for the years subsequent to the termination, to determine damages for the breach of defendant's promise to give "extremely fair treatment," or alternatively, an allowance of an amount necessary to prevent injustice.

■■ The plaintiff's contention on its appeal is that the trial judge abused his discretion by offering a remittitur and granting a new trial. There is no doubt that the federal district court has the power to offer a remittitur and, if refused, grant a new trial. *Dimick v. Schiedt,* 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935). The standard for appellate review of a trial judge's order granting a new trial for an excessive verdict has been explained in *Taylor v. Washington Terminal Co.,* 133 U.S.App.D.C. 110, 409 F.2d 145, 149 (1969), *cert. denied,* 396 U.S. 835, 90 S.Ct. 93, 24 L.Ed.2d 85:

> The trial judge's view that a verdict is outside the proper range deserves considerable deference. His exercise of discretion in granting the motion is reviewable only for abuse. Thus we will reverse the grant of a new trial for excessive verdict only where the quantum of damages found by the jury was *clearly* within "the maximum limit of a reasonable change." [Emphasis in original.]

See also, *Gorsalitz v. Olin Mathieson Chemical Corp.,* 429 F.2d 1033 (5th Cir. 1970), *cert. denied,* 407 U.S. 921, 92 S.Ct. 2463, 32 L.Ed.2d 807 (1972); *Brewer v. Uniroyal, Inc.,* 498 F.2d 973 (6th Cir. 1974). Since the damage issue in this case is dependent upon the interpretation of a vague term, or, in the alternative the determination of an amount or equitable grounds, we cannot say that the first jury verdict was clearly within this "reasonable range." On appeal, the trial judge's opportunity to view the "living courtroom" must be given great weight, especially when assessing the intent of the parties. We can find no abuse of discretion and accordingly affirm the judgment of the district court.

The Clerk of this court is directed to enter judgment affirming the judgment appealed from.

SWYGERT, Circuit Judge (dissenting).

I cannot agree with the majority's conclusion that it was proper to give the jury free reign to decide what constitutes "extremely fair treatment." I concur in the portion of the opinion upholding the finding of equitable estoppel based on the letter of April 29, 1975. But I do not understand why the majority concludes that the perimeters of this estoppel are to be based only on a single phrase of that letter, viewed out of context.

Equitable estoppel has been invoked in this case to override the written contract between these parties because it would be unfair to allow the defendant to rely on that contract in light of the April 29 letter. Yet, it seems to me, it is just as unfair to ignore the very instrument that necessitates the use of the equitable estoppel doctrine. I believe this is what the majority has done. We are concerned with a dispute arising in a commercial context. Certainly, Eaton, Yale & Towne never agreed that in case of cancellation plaintiff would receive whatever a jury thought to be "extremely fair treatment." In the same letter in which this now seized upon phrase was used, the "normal procedure" was specifically spelled out: full credit for all orders received within thirty days after final cancellation date and shipped, at

most, within one year after cancellation. I think that the phrase "extremely fair treatment" must be read to refer to this statement of the normal procedure. The phrase must be given contours if we are to reach an equitable result and the contours are those contained in the same letter. It is interesting to note that to a considerable extent plaintiff, at one time, agreed with my view of what is "equitable" since a letter was written on October 22, 1968 requesting this "fair treatment" which "would involve full payments for all orders booked before October 1, 1968, regardless of when shipped."

The majority approves the "legal" conclusion that equitable estoppel must apply, but then relies on the "jury question" rubric in regard to the issue of what should fill the void created by disregarding the contract. I do not think that we can interfere with a contract in the name of equity and then ignore the question of the "equitableness" of the outcome of that interference. I would hold that Ehret is entitled to no more than that which would be received under the most liberal interpretation of Eaton's "normal procedure" as defined in the letter of April 29.