STACK CONSTRUCTION COMPANY, Plaintiff-Appellant, v. CONTINENTAL CONSTRUCTION CORPORATION, Defendant-Respondent.

Supreme Court

*No. 76–440. Submitted on briefs February 28, 1979.—Decided May 1, 1979.*
(Also reported in 277 N.W.2d 769.)

638

For the appellant the cause was submitted on the brief of *Krawczyk & Duginski* of Milwaukee.

For the respondent the cause was submitted on the brief of *Lloyd S. Jacobson* of Milwaukee.

HEFFERNAN, J. The only question presented on this appeal is whether the plaintiff subcontractor, Stack Construction Company, which had no obligation under the original contract to dig post holes, entered into a subsequent agreement with the general contractor, Continental Construction Corp., whereby Stack agreed to dig the post holes and Continental agreed to pay for the work. We conclude that no contract of any nature for the digging of post holes was entered into between the parties. The judgment dismissing Stack's complaint must therefore be affirmed.

The record shows that Continental Construction Corp. was the general contractor for the Willow Creek Homes Project. In March of 1971, the Stack Construction Company entered into a contract with Continental to do the earth work on the project. After the work was completed, Stack Construction Company commenced an action against Continental alleging that Continental owed it over $38,000 for contract work and extras. By stipulation of the parties, the various claims have been settled, with the exception of Stack's claim for compensation for digging more than 2,000 holes for fence posts. It is undisputed that the value of the work done in digging the fence-post holes is approximately $20,000.

At trial it was determined that Stack was not obligated under its contract to dig the post holes. The correctness of the trial court's determination is not disputed on this appeal. The only question on this appeal is whether Stack was induced to dig the post holes and Continental agreed to pay for the work.

The original contract between the parties contained this provision in respect to Stack's obligation:

"Excavate to elevations and dimensions indicated for footings, foundations, drives, walks and other works shown, plus sufficient space to permit erection of forms, shoring, dampproofing and inspection of foundations."

On the basis of commonly accepted usage in the contracting business, which was shown by evidence at trial, the court concluded that Stack had no obligation under the contract to dig the post holes. The factual basis for this conclusion was not contrary to the great weight and clear preponderance of the evidence. The court's decision in that respect is not at issue on this appeal.

The record shows, however, that, in July of 1971, the parties disagreed about Stack's obligation to dig the post holes. The president of Stack informed the president of Continental that Stack did not think that digging the post holes was an obligation under the contract. Continental's president testified that he told Stack's president that the hole digging was Stack's obligation under the contract. Continental's president stated that Stack's president's response was that he wanted to read over the contract and to think about it. Continental's president testified, "The next thing I knew, he [Stack] was digging posts."

Stack never disputed that the post-hole digging was a part of its contract obligation until after the contract was completed. Stack's president at trial asserted, however, that he never acquiesced in Continental's interpretation that the hole digging was a part of the contract, and he stated that he frequently told Continental's representative that he was not obligated by the contract to dig the holes. Stack's president testified that he did the work only because he was told by Continental that, if he did not do the work, someone else would be hired and that Stack would be "back charged." Stack said that its experience was that "back charging" would be about four times as expensive as the cost to do the work.

The contract also contained the following provision:

"Subcontractor [Stack] shall make no claim for additional work or materials unless done in pursuance of written orders from the Contractor [Continental], and

pro-rated billings for any such claims shall be given to the Contractor in writing before the next ensuing payment or shall be considered as abandoned."

Continental submitted no written orders for the post-hole digging, and Stack submitted no pro-rated bills as the post-hole digging was in progress.

Because it is now agreed that the original contract did not contemplate that Stack do the post-hole digging, the only question on this appeal is whether anything in the conduct of the parties at or following the time of the contract dispute in July of 1971 created an additional or new contract obligating Continental to pay for any post-hole digging done by Stack. In respect to this portion of the transaction, the trial court made the following findings of fact:

"If it was the plaintiff's intent, when it undertook to do the work, that it would be entitled to additional compensation if it was later determined that the work was not part of the contract, this intent was unilateral and not based upon any agreement with the defendant.

"The defendant thought that the plaintiff had accepted its interpretation of the contract from the commencement of the digging of the postholes in the summer of 1971 until December of 1973. This is underlined by the fact that during this period of time, billings were submitted for the redigging of postholes but not for the original digging."

On the basis of these findings the trial court concluded that the controlling factor was the absence of any agreement on the post-hole work. We agree with that conclusion of the trial court.

Stack, on this appeal, seeks to recover for the post-hole work on the theory that a second informal contract was formed. Stack underpins its arguments with the "reliance" theory of the Restatement 1 of *Contracts,* sec. 90, p. 110 (1932). This section was referred to in *Lazarus v. American Motors Corp.,* 21 Wis.2d 76, 83, 123 N.W.2d

548 (1963), and was given the specific approval of this court in *Hoffman v. Red Owl Stores, Inc.,* 26 Wis.2d 683, 694 ff., 133 N.W.2d 267 (1965).

That section, as now modified in the Restatement of *Contracts* 2d, sec. 90, p. 215 (1973), provides in part:

"Sec. 90. **Promise Reasonably Inducing Action or Forbearance.**

"(1) A promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

This theory of an informal contract based on reliance is an exception to the general rule that the creation of a contract requires a bargain in which there is a mutual assent and consideration. Restatement 2d, sec. 19, p. 42 and sec. 19, comment e, p. 44.

In *Hoffman v. Red Owl Stores,* this court gave explicit recognition to the conditions which must exist to impose obligations upon parties when one acts in reliance upon the promise of another. We said in *Hoffman v. Red Owl Stores, supra* at 698:

"[T]he conditions imposed are:

"(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

"(2) Did the promise induce such action or forbearance?

"(3) Can injustice be avoided only by enforcement of the promise?"

While the theory relied upon by Stack is recognized and is denominated by this court as the doctrine of

promissory estoppel, the facts do not support its application to the present case. The theory does not apply, because Continental made no promise, express or implied, to pay if Stack did the work. Rather, the record shows that Continental told Stack that, because the post holes were part of Stack's original obligation, no additional payment would be made for the post-hole digging and that, if Stack did not do the work, Stack would be "back charged" for the performance by others. There was no promise whatsoever for additional payment. As Corbin has commented, "Action in reliance on a supposed promise creates no obligation on a man whose only promise is wholly illusory." 1A Corbin on *Contracts,* sec. 201, p. 223 (1963).

Stack attempts to rely on the rule that, where a person requests that valuable services be performed or accepts such services without objection, an implied promise to pay the reasonable value of the services is made. In the present case, however, Continental requested that Stack do the hole-digging work pursuant to the obligations of the original contract. It expressly disclaimed any obligation to make any additional payment.

Although the trial court determined that the post-hole work was not covered by the original contract, Continental's request for performance was made pursuant to that contract, and no promise was ever made to pay more than the original contract price upon the plaintiff's performance of the post-hole work.

The trial court made the finding of fact that, when Stack commenced doing the post-hole work, Continental had reason to believe Stack had accepted Continental's interpretation of the original contract. That finding is not contrary to the great weight and clear preponderance of the evidence.

While the court also made the finding that Stack thought, when it undertook the post-hole digging, that it

would be entitled to additional compensation, no promise, express or implied, was found upon which that belief reasonably could be based.

In addition, there was testimony that, after Stack's initial objection to doing the work of digging the post-holes as an obligation under the original contract, it made no further objection during the two-year period it was performing the work. This conduct was consistent with Continental's belief that Stack was performing the work as an obligation of the original contract. Stack's conduct was inconsistent with the theory that a new contract was formed, particularly when the underlying contract provided that any "additional work" was to be done only pursuant to a written order from Continental and was to be billed as the work progressed. No additional work was ever ordered by Continental, and no billing by Stack was made during the course of the work for the post-hole digging.

It should also be pointed out that Stack at no time availed itself of arbitration, which was provided for in the contract, to resolve any disputes. It is clear from these facts that Continental never made a promise, express or implied, to pay Stack for the post-hole work. Nothing Continental did or said created any obligation to pay Stack for the work performed in digging the post holes.

*By the Court.*—Judgment affirmed.