Eric W. KRAMER, Plaintiff-Respondent,

v.

ALPINE VALLEY RESORT, INC., a Wisconsin Corporation,
Defendant-Appellant-Petitioner,

FOXFIRE AT ALPINE VALLEY, a/k/a Foxwood at Alpine
Valley, a partnership, and Alan B. Kaiser, individ-
ually and as a partner in Foxfire at Alpine Valley,
a/k/a Foxwood at Alpine Valley, Defendants.

Supreme Court

*No. 81–344. Argued June 1, 1982.—Decided July 2, 1982.*

(Also reported in 321 N.W.2d 293.)

For the defendant-petitioner there were briefs by *Frederick R. Hardt* and *Godfrey, Pfeil & Neshek, S.C.*, of Elkhorn, and oral argument by *Mr. Hardt*.

For the plaintiff-respondent there was a brief by *Steven M. Epstein* and *Levine & Epstein* of Milwaukee, and oral argument by *Steven M. Epstein*.

LOUIS J. CECI, J. Eric W. Kramer (plaintiff) brought this action seeking monetary damages on alternative theories of promissory estoppel and breach of contract. Defendants, Alpine Valley Resort, Inc. (Alpine Valley ) and Alan B. Kaiser (Kaiser) filed answers denying liability as to both claims. The case was tried without a jury on September 5, 1980, before the Hon. ROBERT H. GOLLMAR in Walworth county circuit court.

At trial neither defendant offered any testimony; they relied solely on cross-examination of plaintiff's witnesses. In a memorandum decision the trial court found that plaintiff established the three elements necessary to recover under the doctrine of promissory estoppel and granted judgment to plaintiff. The trial court awarded damages in the amount of $5,500 for lost teaching salary, $500 (100 hours at $5 per hour) for plaintiff's labor in constructing the leather shop, $843.79 for cost of construction materials, $365 for interest on money borrowed for the project, $345 for profits not earned because of plaintiff's involvement in the workshop-gallery and $100 plus interest for the security deposit.

Alpine Valley appealed from the judgment. The court of appeals affirmed the judgment of the trial court. Alpine Valley sought and was granted a review of the decision of the court of appeals.

This review raises the following issue:

Does the existence of a lease agreement bar recovery under the doctrine of promissory estoppel?

Because we conclude that under the facts of this case the lease agreement does not embody the total business relationship of the parties, the lease agreement does not bar recovery under promissory estoppel. Therefore, we affirm the holding of the court of appeals.

Alpine Valley is a large resort area located in East Troy, Wisconsin. Open all year-round, Alpine Valley operates as a ski resort in the winter and in the summer it sponsors a series of musical events.

In March of 1976, Alpine Valley formed a partnership with Kaiser to develop a commercial complex known as Foxfire at Alpine Valley (Foxfire). Foxfire was designed to be a $4,000,000 workshop-gallery, pavilion and tennis complex located on the premises of Alpine Valley.

The workshop-gallery was to provide craftsmen with a place to work and sell their completed handmade products. The gallery was structured so that the various artistic disciplines would form separate cooperatives. Each cooperative was to be headed by a director. Pursuant to the partnership agreement, Alpine Valley furnished the capital necessary to build the complex and Kaiser sought craftsmen to lease space in the gallery.

In an effort to solicit craftsmen, Kaiser prepared and distributed a number of informational brochures relating to the workshop-gallery. These brochures were paid for and reviewed by Alpine Valley.[1] The brochures set forth a floor plan showing how the various cooperatives were

---

[1] Fred A. Cimino, general manager and president of Alpine Valley, was called adversely by the plaintiff. Cimino testified that both he and Joseph Kosik, principal owner of Alpine Valley, looked at the informational brochures. He testified further that Kosik would have been the person approving the printing of the brochures.

to be set up and emphasized the large number of people who would visit Foxfire.[2]

Plaintiff was contacted by one of Kaiser's associates to become a member of a leather cooperative that was being formed at Foxfire. Initially, plaintiff was not interested in the cooperative because he was teaching full-time at the Van Gorder-Walden School in Chicago. Although plaintiff told the associate he was not interested in the project, the associate asked plaintiff if he would be willing to look at the package of literature explaining Foxfire. Plaintiff agreed to receive the information.

After reading the informational brochures, plaintiff became interested in Foxfire. Plaintiff testified that his change of mind was due to the fact that a business the size of Alpine Valley was involved in the project and the statement in the brochure that a thousand people would walk through Foxfire daily. Plaintiff visited Alpine Valley in June of 1976 and eventually agreed to become the director of the leather cooperative.

After committing himself to become director of the leather cooperative, plaintiff informed Ed Van Gorder, head of the Van Gorder-Walden School, that he would not be returning for the next school year. Van Gorder testified that he asked plaintiff to consider teaching half-time. Plaintiff agreed to teach half-time for a salary of $5,500, exactly half of his full-time salary.

The workshop-gallery was scheduled to open in October of 1976. In preparation for the opening, plaintiff borrowed money for the actual construction of the leather cooperative workshop. He paid $843.79 for materials and $365 for interest on money borrowed for the project. Plaintiff also estimated that he worked 100 hours himself on the construction work.

---

[2] Specifically, the brochures claimed that "Over a thousand people will walk through the doors of Foxfire's workshop-gallery every day of the year. . . ."

Foxfire and the plaintiff entered into four successive leases with each superceding its predecessor. The fourth lease was signed on November 12, 1976, and was in the form of a letter from plaintiff to the supervisor of the Foxfire workshop-gallery. The lease provided that the leather cooperative would rent 1,020 square feet of the workshop-gallery. The leather cooperative was to pay rent of $9 per square foot and a commission of five percent of the cooperative's annual gross sales exceeding $50,000. The lease also gave the leather cooperative a right of first refusal for adjacent floor space. Attached to the lease was a "Statement of Structure and Purpose" which delineated the responsibilities of the director and members of the cooperative.

Due to a series of delays, the workshop-gallery did not open until November 27, 1976. After opening, the gallery remained open for the following three weekends. The decision to close was a unilateral one made by Joseph Kosik, the principal owner of Alpine Valley. At the time of the closing, the representatives of Foxfire told the plaintiff that the gallery would reopen in the late spring of 1977. The workshop-gallery never reopened. However, during the winter months, Alpine Valley did furnish the workshop members with a room where they could sell their products.

On review, Alpine Valley argues that the existence of an unambiguous contract between plaintiff and Foxfire acts as a bar against recovery under promissory estoppel and limits plaintiff's recovery to breach of contract. Usually, we could accept Alpine Valley's argument. However, in cases such as the present where the contract executed by the parties represents a minor aspect of a larger business relationship, we cannot agree with Alpine Valley's general proposition. In situations where the contract fails to embody essential elements of the total business relationship of the parties, we conclude that the ex-

istence of a contract does not bar recovery under promissory estoppel.

## Promissory Estoppel

In *Hoffman v. Red Owl Stores, Inc.,* 26 Wis. 2d 683, 133 N.W.2d 267 (1965), this court held that a cause of action may be grounded upon promissory estoppel[3] when the following three conditions are met:

1. The promisor must make a promise which he should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee;

2. the promise must induce such action or forbearance; and

3. injustice can only be avoided by enforcement of the promise. *Id.* at 698.

The first two requirements are issues of fact while the third requirement, that enforcement of the promise is necessary to avoid injustice, involves a policy decision by the court. *Hoffman* at 698.

The trial court found that all three conditions existed. On review, Alpine Valley does not raise an issue with respect to these findings.[4] Therefore, we need not in-

---

[3] Sec. 90 of Restatement, 1 *Contracts,* provides at 110:

"A promise which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise."

[4] On review, however, Alpine Valley argues that the court of appeals makes findings of fact which are independent of the trial court's. Specifically, Alpine Valley cites certain language of the court of appeals' opinion which defined the promise Foxfire made to plaintiff. We reject Alpine Valley's argument and conclude that the appellate court did not engage in independent factfinding, but rather, more clearly stated the promise made to the plaintiff by Foxfire.

quire as to whether the evidence was sufficient to support the trial court's findings.

In support of its position that the lease agreement precludes recovery under promissory estoppel, Alpine Valley relies heavily on a quote from *Goff v. Massachusetts Protective Association, Inc.*, 46 Wis. 2d 712, 176 N.W.2d 576 (1970), which reads:

". . . [T]he contracts are a complete defense to the cause of action based on promissory estoppel. . . ." *Id.* at 717.

This quotation, when read in isolation from the entire opinion, may appear to favor Alpine Valley's argument. However, a closer examination of *Goff* reveals that it is factually distinguishable from the present case.

In *Goff*, the plaintiff entered into a special agent contract with the defendant insurance company to sell insurance. By the terms of the contract, Goff agreed not to act as agent or broker for any other insurance company. The contract allowed either party to terminate the contract by giving thirty days' written notice to the other party. The insurance company terminated Goff's contract because he acted as agent for other insurance companies.

Goff labeled one of his causes of actions promissory estoppel. Goff contended that because the insurance company knew of his selling activities with other companies, it had waived the right to object to his conduct. In addressing the issue, this court stated:

". . . [t]he gist of this argument is not promissory estoppel because there is no promise; it is a plain estoppel argument that the companies cannot rely on his breach of contract as a ground for termination because of acquiescence. But, the insurance companies need no ground for termination, and the contracts are a complete defense to the cause of action based on promissory estoppel or a defense of estoppel. Moreover, the allegations

do not state a cause of action for promissory estoppel. There is no promise on the part of the defendants which as the basis of such a cause of action is required." *Id.* at 717.

This court's finding in *Goff* that the contract was a defense to promissory estoppel was based on the provisions of the contract. The contract specifically allowed either party to terminate the employment relationship upon thirty days' written notice. Also, Goff had breached the contract by acting as a dual agent. As the abovementioned reasoning indicates, the contract in *Goff* adequately represented the employment relationship between the parties.

Here, Alpine Valley can cite no provision in the lease agreement which allowed Foxfire to unilaterally close the workshop-gallery. The lease agreement represents one minor aspect of a larger business relationship. It is because the lease agreement fails to incorporate the obligations of Foxfire to plaintiff in its business endeavor generally that plaintiff is allowed recovery under promissory estoppel. Therefore, *Goff* is clearly distinguishable and Alpine Valley's reliance upon it is misplaced.

The lease agreement between the parties was very limited in scope. It completely ignored essential features of the business relationship. Underlying the whole business relationship between Foxfire and the plaintiff was Foxfire's promise that the workshop-gallery was to be a permanent place for craftsmen to demonstrate their skills and to sell their products. Foxfire represented to plaintiff that the complex would be open on a daily basis throughout the year, beginning in the fall of 1976. Not only were these promises necessary, but the existence of the business relationship between Foxfire and plaintiff was dependent upon Foxfire's continual operation.

Moreover, it is these promises which give effect to the lease agreement which Alpine Valley attempts to use as a

shield against damages. For Foxfire to argue that the lease agreement bars any recovery based on promissory estoppel completely ignores the fact that the same lease agreement is meaningless without Foxfire's underlying promise to continue operating. Since Foxfire's promises were essential features of the total business relationship of the parties and were not integrated into the lease agreement, we conclude that the lease agreement does not bar recovery under promissory estoppel.[5]

Our holding today is based on the finding that the lease agreement failed to embody the total business relationship between the parties. Specifically, this is evidenced by the fact that the narrowly drawn lease agreement dealt with one minor aspect, rent and space, of a much larger business relationship, a workshop-gallery open daily to the public. Since the lease agreement entered into between Foxfire and plaintiff is so limited in scope that it fails to provide for essential elements of the parties' total business relationship, it cannot be used to preclude recovery under promissory estoppel.

Generally, we agree with the proposition that the existence of a contractual relationship will bar a claim based on promissory estoppel. However, as we have demonstrated by our holding today, this is subject to an exception where the contracts fails to address the essential elements of the parties' total business relationship. Therefore, whether or not a party may recover monetary

[5] Alpine Valley also argues that the trial court abused its discretion by basing its decision solely upon plaintiff's cause of action for promissory estoppel without giving effect to the lease agreement. Based on our holding, plaintiff's cause of action for promissory estoppel is independent of breach of contract. Since Alpine Valley's defense was not based on the substantive provisions of the lease agreement, but on the mere existence of a lease agreement, we conclude this agreement is without merit.

damages under the doctrine of promissory estoppel, where a contract exists, must be determined on a case-by-case basis.

Alpine Valley raises one final argument. It asserts that applying the promissory estoppel doctrine in cases where the parties have entered into a valid and enforceable contract violates the parole evidence rule. Since we find that the parole evidence rule is inapplicable, Alpine Valley's argument fails.

The parole evidence rule was defined in *Federal Deposit Ins. Corp. v. First Mortgage Investors,* 76 Wis. 2d 151, 250 N.W.2d 362 (1976) :

> "When the parties to a contract embody their agreement in writing and intend the writing to be the final expression of their agreement, the terms of the writing may not be varied or contradicted by evidence of any prior written or oral agreement in the absence of fraud, duress, or mutual mistake." *Id.* at 156.

The parole evidence rule only applies if the writing is intended by both parties to be the final and complete expression of their agreement and only bars evidence intended to vary such expression. Here, it has been established that the lease agreement did not embody the entire business relationship. Furthermore, the promise made to plaintiff regarding the workshop-gallery operating on a daily basis in no way varies or contradicts anything in the lease agreement. Therefore, the parole evidence rule is inapplicable and oral evidence supporting a recovery under the promissory estoppel doctrine is admissible.

### Damages

In awarding damages in promissory estoppel cases, this court stated in *Hoffman*:

"[T]hey [damages] should be only such as in the opinion of the court are necessary to prevent injustice. Mechanical or rule-of-thumb approaches to the damage problem should be avoided." *Id.* at 701.

The court continued:

"Moreover the amount allowed as Damages may be determined by the plaintiff's expenditures or change of position in reliance as well as by the value to him of the promised performance." *Id.* at 701–02, citing 1A Corbin, *Contracts,* p. 221, sec. 200.

Based on the above-cited language from *Hoffman,* we conclude that the damages granted by the trial court were proper. Since the trial court found that the damages were due to plaintiff's change of position in reliance on Foxfire's promise to keep the workshop open on a daily basis, the award was not an abuse of discretion. Therefore, the award will not be upset by this court.

*By the Court.*—The decision of the court of appeals is affirmed.