John A. WERNER & W & D Services,
Inc., Plaintiffs-Appellants,
Cross-Appellees,

v.

XEROX CORPORATION,
Defendant-Appellee,
Cross-Appellant.

Nos. 83–1386, 83–1407.

United States Court of Appeals,
Seventh Circuit.

Argued Oct. 18, 1983.
Decided April 18, 1984.

Thomas A. Bailey, Fricker & Bailey, Milwaukee, Wis., for plaintiffs-appellants, cross-appellees.

William A. Stearns, Quarles & Brady, Milwaukee, Wis., for defendant-appellee, cross-appellant.

Before BAUER and COFFEY, Circuit Judges, and DUMBAULD, Senior District Judge.[*]

BAUER, Circuit Judge.

Plaintiffs John A. Werner and W & D Services, Inc., appeal the decision of the district court awarding them $19,600 in damages on their promissory estoppel claim against defendant Xerox Corporation. Xerox cross-appeals. We affirm.

## I. FACTS

This promissory estoppel action arises from the business relationship between W & D and Xerox. John A. Werner is a consulting engineer with considerable experience in the design and manufacture of special metal working machinery. During the twelve years preceding the trial in this case, Werner had been doing business principally through W & D Services, a corporation which he formed to build special metal working machinery and of which he is the sole owner.

Xerox Corporation, which manufactures photocopying machines, sought to improve the process used in manufacturing metal rollers for its machines. Acting generally through Frank Wolf, a Manufacturing Technology Specialist at Xerox, Xerox conducted a world-wide search for a manufacturer that would produce the machines capable of making these improved rollers. When Wolf completed the search in October 1978, he had discovered only four manufacturers, one of which was W & D, who were capable of producing the machines and rollers.

From April 1978 to November 1979, W & D made prototype rollers and performed developmental work for Xerox on an old lathe which W & D previously had assembled. Although the lathe could not produce rollers to Xerox's specifications, Xerox was sufficiently encouraged by the results to request a price quotation from W & D for designing and building a similar machine. In November 1978, Xerox issued a purchase order to W & D for a new machine. In March and November, 1979, Xerox ordered two additional machines, even though the first had not yet been qualified as meeting Xerox's specifications. During 1980, W & D delivered all three machines to Xerox for installation.

Xerox planned to use these three machines to produce the improved rollers at its plant in Rochester, New York. With regard to these three machines, many of the dealings between Xerox and W & D were expressly covered by a series of agreements embodied in quotations and invoices. The district court found that Xerox fully performed its obligations under these agreements. Neither party contests this finding on appeal.

The basis of this appeal is what, if any, additional obligations Xerox may owe to W & D. Xerox contends that these agreements encompass its entire relationship with W & D, that it has fulfilled all its obligations to W & D, and that W & D has sustained no damage. W & D contends that Xerox is liable for damages which W & D sustained through reliance on Wolf's representations to W & D.

The district court agreed in part with W & D. The district court found that Xerox, through Wolf, offered to make W & D the principal off-load producer of Xerox rollers.

[*] The Honorable Edward Dumbauld, Senior Judge of the United States District Court for the Western District of Pennsylvania, is sitting by designation.

At the time Xerox was looking for a company to manufacture the machine that would produce its new rollers, Xerox also was searching for an off-load producer for its improved rollers. Establishing an off-load produce would allow Xerox to meet demands for relatively small quantities of rollers without changing its in-house machines to accommodate the specifications of smaller runs.

The court based its conclusion regarding Wolf's offer to establish Werner as the principal off-load supplier on representations that Wolf made to Werner, two of which were specifically cited by the district court in its order. First, in early 1978, Werner and Wolf visited the Church Metals Spinning Company, which was owned by Don and Gene Verhein. Werner there showed Wolf a machine that Werner had designed for Church Metals, which Werner exhibited as a prototype of the machine he could build for Xerox for its in-house production of the rollers. During this meeting Wolf proposed both that Werner build a machine to manufacture rollers for Xerox and that "if they were 'smart' they would build a machine for themselves and run off parts for Xerox." The district court concluded that Wolf "painted a rosy picture of Werner's future as a off-load supplier of parts for Xerox."

Second, in November 1978, Werner and the Verheins formed the Q.E.D. Corporation, which leased a facility for manufacturing the machines for Xerox. At the same time, Q.E.D. leased additional space for producing off-load rollers. Manufacturing the machines required a facility with heavy equipment, whereas producing rollers required space for raw materials, a machine to produce the parts, inspection equipment, and shipping facilities. According to the district court, Wolf visited Q.E.D., "saw the space that was leased and thought it adequate for a production facility and reassured Werner that producing parts would be a 'nice little business' to get into, and one that would 'really pay.'"

In July 1979, Dr. Charles Downey, the manager of Wolf's department at Xerox,

visited the Q.E.D. Corporation. Werner testified at trial that Downey told him and the Verheins that they "would never make parts for Xerox at this facility." Werner further testified that he and the Verheins were astounded by Downey's statement. After Downey's visit, Werner contacted Wolf, who told him to disregard Downey's statements and that Downey "didn't know what he was talking about." On other occasions Wolf continued to reassure Werner that he would be an off-load supplier. Nevertheless, the Verheins sued Werner for a refund of their investment in Q.E.D., basing their suit on misrepresentations and deceit by Werner. Werner, however, used W & D to continue preparing the new facility to be an off-load supplier. In October 1980, after W & D delivered the third machine to Xerox, Xerox prepared to run off-load parts in its own plant and terminated its relationship with Werner.

Werner and W & D sued Xerox to recover damages based on theories of breach of contract, promissory estoppel, and deceit. The court rejected the plaintiffs' claims of breach of contract and deceit, but entered judgment in favor of the plaintiffs for $19,-600 based on promissory estoppel. The court found that Werner reasonably had relied on Xerox's representations through July 1979, but that he "had no basis for relying on Wolf after the Downey statements were made." The court thus refused to award Werner damages for expenses he incurred after July 1979.

## II. PROMISSORY ESTOPPEL

In the landmark case of *Hoffman v. Red Owl Stores, Inc.*, 26 Wis.2d 683, 133 N.W.2d 267 (1965), the Wisconsin Supreme Court established three conditions for application of promissory estoppel:

(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?

(2) Did the promise induce such action or forbearance?

(3) Can injustice be avoided only by enforcement of the promise?

*Id.* at 698, 133 N.W.2d at 275.

The first two conditions are questions of fact and we will not set aside the court's findings unless clearly erroneous. F.R.C.P. 52(a). 26 Wis.2d at 698, 133 N.W.2d at 275. The third condition requires the court to make a policy decision that necessarily requires the exercise of discretion, *id.*, which decision we will not reverse absent a showing that the court abused its discretion. We affirm the district court's conclusions on each element of the *Red Owl* test.

First, the district court determined that Xerox, through Wolf, promised Werner that he would be an off-load parts supplier for Xerox. Wolf's promises were more than mere representations regarding what Xerox might do in the future. The district court found that Wolf consistently and actively encouraged Werner to set up an off-load supply facility and that Wolf approved of Werner's progress toward that goal. Xerox should have reasonably expected Wolf's actions to induce W & D's action.[1] The district court found, however, that Werner could not reasonably have relied on Xerox's promises after Downey's visit in July 1979, when Downey told Werner and the Verheins that they would never make off-load parts for Xerox. The district court had to weigh much evidence and determine the credibility of the witnesses to find a promise from Xerox to W & D. Both Werner and Wolf testified at length at the trial regarding the extent and nature of the business relationship between W & D and Xerox. The district court specifically found that Werner was "a more credible witness," and that his testimony was "more deserving of belief than that of Mr. Wolf on the aspects of the case where their testimony differs." We will not reweigh those determinations here. Werner's testimony was a crucial part of the district court's finding that Xerox made promises to W & D. These findings are not clearly erroneous.

Second, the district court found that until July 1979, Wolf's promises did induce Werner's action. Werner contends that Xerox's promises induced action on his part through October 1980. The court found, however, that after July 1979 Werner's reliance upon Wolf's statements was not justified. Xerox agrees that any reliance upon Wolf's "reassurances" after July 1979 were not justified in the light of Downey's unequivocal statement to Werner and the Verheins.

Werner claims that the court based this finding upon an improper legal standard. Werner contends that under *Red Owl* the promisee's reliance need only be in the exercise of ordinary care. 26 Wis.2d at 697, 133 N.W.2d at 274. Werner thus suggests that when the district court required that Werner's reliance have been "justifiable," it raised the legal standard beyond ordinary care, even though the "justifiable reliance" language is taken from our decision in *Janke Construction Company v. Vulcan Materials*, 527 F.2d 772, 779 (7th Cir.1976). Xerox counters this argument by contending that whether the promisee's reliance needs to be "in the exercise of ordinary care" or "justifiable" makes no difference under the theory of promissory estoppel. We agree that both terms are merely different ways of expressing the same concept: the promisee's reliance must be reasonable to recover damages. Werner's conduct, as the district court found, was reasonable until July 1979, when Downey's statements were made. At that point, any reliance by Werner on Wolf's representations clearly was unreasonable. No prudent businessman would have considered proceeding as if nothing had hap-

---

1. If Xerox's promise had been merely a promise of some future conduct, this action would fail because such a promise of future conduct on the part of Xerox is not the kind of promise which Xerox "should reasonably expect to induce action or forbearance of a definite and substantial character" on the part of Werner. Such a promise would be unenforceable under theories of promissory estoppel because it would be subject to too many contingencies. *See Gruen Industries, Inc. v. Biller*, 608 F.2d 274, 280–81 (7th Cir.1979).

pened, as Werner apparently did in this case. The district court's holding on the second prong of *Red Owl* therefore was not clearly erroneous.

■ Third, the district court held that injustice could be avoided only by enforcement of Wolf's promise. This determination necessarily requires the exercise of the trial court's discretion, 26 Wis.2d at 698, 133 N.W.2d at 275, and we will reverse the court only upon a showing that it has abused that discretion. Here, it was not "very speculative that the plaintiff has actually suffered from his reliance," *Silberman v. Roethe*, 64 Wis.2d 131, 144, 218 N.W.2d 723, 729 (1974), but instead Werner incurred substantial detriment in reliance on Xerox's promises. The trial court found that, to his detriment, Werner "deviated from his usual manner of doing business, ... leased a large facility [, went] into business with the Verheims (sic) and hired an employee, Robert Parr, to work for the newly created corporation." On the record before us, the court's finding was not an abuse of discretion.

### III. DAMAGES

■ Xerox, on cross-appeal, contends that the $19,600 damage award is unsupported by the facts and the applicable law. Damages in promissory estoppel actions are limited to reliance damages, *Janke Construction*, 527 F.2d at 780, and the trial judge has wide latitude in the affixing of damages. *Harry Alter Co. v. Chrysler Corp.*, 285 F.2d 903, 907 (7th Cir.1961). We will overturn an award of damages only if it is clearly erroneous.

The district court reviewed the large damage claim submitted by plaintiffs, examined the supporting documents, and concluded that a fair and reasonable damage figure, incurred in reliance upon Xerox's promises, was $19,600. Those damages consisted of $3,500 for a portion of Parr's salary, $2,000 for some of the shop supplies and equipment, $5,100 for part of the rent and telephone expenses, and $9,000 for a portion of the costs involved in the Verhein's lawsuit against Werner. Nothing in the record supports a conclusion that this award is clearly erroneous.

### IV. DECEIT

Werner's final claim is that Xerox deceived him by stealing his idea for the method of producing the new rollers. Werner failed to convince the district court that Xerox misappropriated his idea; the court found the claim supported only by "fanciful speculation." We also reject this claim as meritless.

For the above stated reasons, the judgment of the district court is affirmed.

AFFIRMED.