LAKESHORE COMMERCIAL FINANCE CORPORATION, Respondent, V. BRADFORD ARMS CORPORATION and others, Defendants: KORNITZ and another, Appellants.*

*No. 158. Argued October 30, 1969.—Decided January 9, 1970.*
(Also reported in 173 N. W. 2d 165.)

* Motion for rehearing denied, with costs, on March 6, 1970.

For the appellants there were briefs by *Kenehan & Huckaby*, attorneys, and *John W. Emmerling* of counsel, all of Milwaukee, and oral argument by *Mr. Emmerling*.

For the respondent there was a brief by *Lorinczi & Weiss*, attorneys, and *Robert K. Steuer* and *Robert L. Habush* of counsel, all of Milwaukee, and oral argument by *Mr. Habush* and *Mr. Steuer*.

CONNOR T. HANSEN, J. Appellants have raised a number of issues:

(1) Did Lakeshore make a definite and unconditional commitment to release the Bradford Arms Corporation mortgage?

(2) Did Mr. Appel have apparent or implied authority to grant a release of mortgage?

(3) Should promissory estoppel be applied in this case?

(4) Should collateral used to pay off other debts have been applied to the note secured by the Bradford Arms Corporation mortgage?

(5) Should Lakeshore be required to account for other collateral which it received?

(6) Were attorney's fees excessive?

*Unconditional release.*

Much of this appeal centers around a narrow issue of fact: What commitment was made by Appel when he returned to the meeting on the afternoon of Friday, May 20, 1966? Appellants contend that Appel, by his oral statements, unconditionally released the Bradford

Arms Corporation's mortgage. On the other hand, Lakeshore argues there was to be a release only upon the receipt of substitute collateral, which was never delivered.

The trial court concluded in its memorandum opinion and order that Appel had not made an unconditional release of the mortgage, but the release would be given upon receipt of satisfactory substitute collateral. The trial court's decision contained the following determinations:

"53. Late that Friday afternoon, Mr. Appel returned and made a definite commitment to release plaintiff's mortgage on receipt of other collateral.

"54. It was clear that future acts would have to take place and the plaintiff could not release its mortgage until satisfactory substitute collateral was actually received."

The issue is, therefore, whether the finding of the trial court is contrary to the great weight and clear preponderance of the evidence. *Babler v. Roelli* (1968), 39 Wis. 2d 566, 159 N. W. 2d 694. Evidence sustaining the trial court is found primarily in the testimony of Leonard Grant, vice-president of American City Bank, and Appel, together with the fact that other contingencies precluded a definite commitment on May 20th. Grant testified that there would be a release of the mortgage and there would be a subsequent meeting to work out the details. Appel testified that the mortgage would be released only upon receipt of substitute collateral. On May 24, 1966, Appel also wrote a letter to the American City Bank & Trust Company, which stated in part:

". . . We have agreed that upon receipt of the specified collateral and appropriate title evidence we will assign our mortgage to the American City Bank & Trust Co."

Finally, the trial court found there were a number of other contingencies which would not be known until the Monday, following the Friday afternoon meeting.

"Howard Kornitz on Page 23 of the transcript speaks of various other contingencies upon which the commitment of his wife and American City depended. He states they would be known by the next Monday. If their action depended on contingencies which would not be known until the next Monday, it is most difficult to conceive a binding obligation on Lakeshore as of Friday as all are part of one overall transaction requiring the mutual acts of all parties. Again, normal business practice would expect a complete and final check before commitment of funds to see that, in modern parlance, 'all systems are go.' The burden of proof on this issue is on the defendants. This Court cannot conclude that that burden has been met."

On appeal, appellants claim the trial court's findings are not based on the evidence but on conclusions erroneously drawn from an impression of what should have been done. Argument is made that the trial court's statement, "Lakeshore *could not* release Bradford until satisfactory substitute collateral was actually received" (emphasis added) indicates the false premise upon which the trial court based its findings. Appellants further argue that Lakeshore could have released without the additional collateral since there was sufficient other collateral for the note. However, what motivated Lakeshore to maintain collateral is of no real consequence and appellants' argument is based, in part, on exhibits not admitted into evidence during the trial.

Appellants also contend the testimony of other witnesses present at the May 20th conference establishes that Appel unconditionally released the mortgage. Mrs. Kornitz (appellant) stated the release of the mortgage was unconditional. However, we have reviewed the extensive record made during the nine day trial of this case,

and, without restating the testimony and evidence in detail, we are of the opinion that it is inconclusive and does not conclusively establish the appellants' version of what transpired at the May 20th meeting. The most this evidence presents is an issue of credibility.

". . . The weight of the testimony and the credibility of the witnesses are a matter for the trier of fact and are not to be disturbed if more than one reasonable inference can be drawn from the credible evidence. *Hanz Trucking, Inc. v. Harris Brothers Co.* (1965), 29 Wis. 2d 254, 138 N. W. 2d 238." *Babler v. Roelli, supra,* 575.

We conclude that the trial court's findings that Appel did not make an unconditional promise on May 20, 1966, to release the Bradford Arms Corporation mortgage are not against the great weight and clear preponderance of the credible evidence and cannot, therefore, be set aside upon review.

*Authority to bind and promissory estoppel.*

The appellants contend that the trial court erred in its determination that Appel did not have the actual or apparent authority to unconditionally release the mortgage and that the appellants could not invoke the doctrine of promissory estoppel in this case.

As previously stated, the trial court's finding that Lakeshore had not agreed to provide an unconditional release is not against the great weight and clear preponderance of the evidence. The trial court found that Appel agreed to release the mortgage upon receipt of substitute collateral and that such collateral had not been received. There is, therefore, no issue about Lakeshore failing to keep its promise, nor whether Appel had authority, either actual or apparent, to commit Lakeshore to an unconditional release.

*Application of proceeds from other collateral.*

The $100,000 note of December 16, 1965, given by J. and S. Corporation (hereinafter referred to as the December 16 note), the subject of this action, was signed by J. and S. Corporation and guaranteed by Stanley Melnick and his wife, Elaine; Joseph Becker and his wife, Carolyn; and five corporations, including the Bradford Arms Corporation. The note was secured by a total of ten mortgages given by the makers and guarantors to Lakeshore, and all the corporations were owned and controlled by Melnick and Becker, who also signed the mortgages on their own behalf and as representatives of the various corporations. These mortgages supplied the collateral for the note, and each of the corporate mortgages, and the one signed by Melnick and Becker, were for $100,000. Appel testified that Lakeshore looked upon the additional amounts as collateral for subsequent loans. Three of these mortgages—those given by J. and S. Corporation; Melnick and Becker; and Cherry Wood Village Corporation—were sold or released prior to the trial, but full proceeds from these transactions were not applied on the December 16th note. The facts surrounding the release or settlement of these three mortgages is not in dispute.

Appellants argue the release of these mortgages impaired the obligation of Bradford Arms Corporation since the full proceeds thereof should have applied to the December 16th note. Appellants conclude that failure to so apply this money released the Bradford Arms Corporation mortgage to the extent funds were diverted. Appellants rely principally upon the following rule:

"**Sec. 84. Release of security.**

"Where the creditor, having had other security for payment of the debtor's obligation, releases or diverts that security, the guarantor is generally discharged to the

extent of the value of the collateral released or diverted. The creditor, having thus had security for payment of the debt, is deemed to have stood toward the guarantor in the position of trustee and, because he has breached that trust duty, may not hold the guarantor liable. . . ." 38 Am. Jur. 2d, *Guaranty,* p. 1091, sec. 84.[1]

To put appellants' argument in perspective, it is necessary to analyze their standing with respect to the note and mortgage. First of all, the mortgages secured a note and the note in this case is a negotiable instrument.[2] Lakeshore is a holder[3] and no claim is made on this appeal that they are a holder in due course.[4] Therefore, Lakeshore is subject to defenses on the underlying transaction which in this case are the mortgages guaranteeing the December 16th note.

Appellant, Grace E. Kornitz, ultimately obtained full interest in the Bradford Arms property which is subject to the mortgage in this case. In order to complete construction of the building, another $100,000 was needed and Mrs. Kornitz borrowed this from her father, appellant Paul K. Thielges, and gave him a mortgage on 39.1473 percent interest in the property to cover the note. However, neither appellant has assumed the December 16th note or mortgage, nor has either become a guarantor. Therefore, appellants are not parties[5] to the transaction

[1] However, the same sec. also reads: "There are, however, exceptions to the general rule stated above. If the guarantor consented to the discharge of the security, he is not released." *See also Will of Stone* (1933), 211 Wis. 518, 531, 248 N. W. 446, where a guarantor conferred, in writing, almost full discretion to the creditor in dealing with collateral so that the creditor surrendering to a third person a part of the collateral did not release the guarantor.

[2] Sec. 403.104, Stats.

[3] Sec. 401.201 (20), Stats.

[4] Sec. 403.302, Stats.

[5] Sec. 401.201, Stats. **"General definitions. . . .**

"(29) 'Party', as distinct from 'third party', means a person who has engaged in a transaction or made an agreement within this code."

and cannot invoke the defenses available under sec. 403.606, Stats.[6]

Appellants argue that Lakeshore is a "payee" and this fact removes any necessity to consider the effect of the Uniform Commercial Code. However, Lakeshore is also a holder and the liability of a holder is detailed in sec. 403.306, Stats.:

**"Rights of one not holder in due course.** Unless he has the rights of a holder in due course any person takes the instrument subject to:

"(1) All valid claims to it on the part of any person; and

"(2) All defenses of any party which would be available in an action on a simple contract; and

"(3) The defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose (s. 403.408) ; and

"(4) The defense that he or a person through whom he holds the instrument acquired it by theft, or that payment or satisfaction to such holder would be inconsistent with the terms of a restrictive indorsement. The claim of any third person to the instrument is not otherwise available as a defense to any party liable thereon unless the third person himself defends the action for such party."

---

[6] Sec. 403.606, Stats. **"Impairment of recourse or of collateral.** (1) The holder discharges any party to the instrument to the extent that without such party's consent the holder:

"(a) Without express reservation of rights releases or agrees not to sue any person against whom the party has to the knowledge of the holder a right of recourse or agrees to suspend the right to enforce against such person the instrument or collateral or otherwise discharges such person, except that failure or delay in effecting any required presentment, protest or notice of dishonor with respect to any such person does not discharge any party as to whom presentment, protest or notice of dishonor is effective or unnecessary; or

"(b) Unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse."

Subsections (1) and (2) are broad in coverage.[7] However, a holder is still subject only to claims which a person has to the instrument, or the defenses of any party. Since appellants have no claims to the instrument, nor are parties to it, Lakeshore is not subject to defenses raised by appellants which would limit their recovery based on the December 16th note.

Appellants contend that it is of no import whether they are a party to the note—what is at issue, they claim, is whether the December 16th note has been paid, will be paid, or has been discharged. Appellants argue they are standing in the shoes of Bradford Arms Corporation and are entitled to be discharged to the extent their property was not released as collateral when the release of other contemporaneous mortgages did not go to pay off the December 16th note. However, this court cannot disregard the plain language in the note and mortgage and simply ignore the fact Bradford Arms Corporation signed the note and mortgage—not appellants.

Along with its mortgage, Bradford Arms Corporation gave Lakeshore copies of a resolution which authorized and empowered either Melnick or Becker to handle "any and all business with Lakeshore Commercial Finance Corporation . . . which this corporation (Bradford) could in any way transact." [8] Testimony at the trial established that before and after May 20, 1966, the allocation of proceeds from the sale of mortgaged property

[7] The official comment to the Uniform Commercial Code, 1962 Official Text With Comments, p. 282, sec. 3–306, states: " ' "All valid claims to it on the part of any person" includes not only claims of legal title, but all liens, equities, or other claims of right against the instrument or its proceeds. It includes claims to rescind a prior negotiation and to recover the instrument or its proceeds.' "

[8] There is no evidence that the authority of Melnick or Becker to act for Bradford Arms Corporation was ever withdrawn before trial, and the trial court found that the Bradford Arms Corporation was, at all times relevant, controlled by Melnick and Becker.

pledged to the December 16th loan was agreed to by Melnick and Becker. Therefore, Bradford Arms Corporation, through its agents Melnick and Becker, was bound and affected by such knowledge and notice which its agents had in relation to the mortgage and the December 16th note.[9]

". . . The general rule is that stated in *Johnson v. Associated Seed Growers, Inc.* (1942), 240 Wis. 278, 282, 283, 3 N. W. 2d 332:

"'. . . the principal is chargeable with and bound and affected by such knowledge and notice as his agent received in relation to the matter over which the authority extended while acting within the scope of his authority in negotiating or attending to a particular transaction. 2 Am. Jur., p. 286, sec. 368; *Brothers v. Bank of Kaukauna,* 84 Wis. 381, 395, 54 N. W. 786; *Venne v. Damrow Bros. Co.* 192 Wis. 249, 254, 212 N. W. 796.'" *Martinson v. Brooks Equipment Leasing, Inc.* (1967), 36 Wis. 2d 209, 218, 152 N. W. 2d 849.

The difficulty facing appellants stems from their assuming ownership of property controlled by one of many Melnick and Becker corporations without insuring that the real estate, the Bradford Arms property, was insulated from these other commitments. In this regard, the trial court found that Mrs. Kornitz failed to act with ordinary care in entering into the transaction whereby she obtained her interest in the Bradford Arms property.

On the basis of the record before us, we find no justification for this court to go beyond the December 16th note and mortgage in order to give appellants standing to challenge Lakeshore's discharge of collateral or require

---

[9] Sec. 401.103, Stats. "**Supplementary general principles of law applicable.** Unless displaced by the particular provisions of this code the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, or other validating or invalidating cause shall supplement its provisions."

its accounting for collateral and proceeds it received and mortgages released in connection therewith. From the evidence available, although appellants now own the property which Bradford Arms Corporation used as collateral for a negotiable instrument, Bradford Arms Corporation consented to the allocation of proceeds to debts other than the December 16th note.

## Attorney's fees.

The December 16th note upon which Lakeshore based their foreclosure allowed "a sum equal to 20% of said principal balance and interest as and for attorney's fees." The principal found due and owing was $98,526.83; interest was $42,750.42; and attorney's fees allowed were $28,247.64. Attorney's fees were taxed as costs under sec. 271.02, Stats.,[10] and the trial court found the amount "fair and reasonable under the circumstances of this action."

Appellants contend the amount of fees are also based on the provisions of the mortgage which provide only for "a reasonable sum as attorneys fees . . ." upon foreclosure and sale. Appellants also argue the fees were

[10] "Costs limited, discretionary. (1) When several actions are brought against parties who might have been joined as defendants and the actions are consolidated under section 269.05 no costs, other than disbursements, shall be allowed to the plaintiff in excess of what he would be entitled to had he brought but one action.

"(2) In equitable actions and special proceedings costs may be allowed or not to any party, in whole or in part, in the discretion of the court, and in any such case the court may award to the successful party such costs (exclusive of disbursements) not exceeding $100, as the court deems reasonable and just, in view of the nature of the case and the work involved. This subsection refers only to such costs and fees as may be taxed by the authority of the statutes, independent of any contract of the parties upon the subject, which contract shall apply unless the court finds that the provisions thereof are inequitable or unjust."

improperly allowed "because the trial court never received or considered any evidence as to what would have been a reasonable amount."

This issue is raised for the first time on appeal. No objection to costs was filed with the trial court nor did any defendant move for review of the costs as taxed by the clerk as required by sec. 271.10 (4), Stats. *Bornemann v. New Berlin* (1965), 27 Wis. 2d 102, 111, 133 N. W. 2d 328.

Unfortunately the appellants did not afford the trial court an opportunity to pass upon the issue they here raise. No evidence was offered as to the reasonableness of the amount of attorney's fees. In determining the amount of attorney's fees to be allowed, the trial court had before it for consideration the note which provided for the payment of attorney's fees in the amount of 20 percent; a brief statement made by counsel for respondents prior to commencement of trial indicating he had devoted in excess of 140 hours on the case, in addition to making seven circuit court appearances and nine appearances before various court commissioners. Counsel also stated that three other attorneys had devoted a similar amount of time to the case. As previously stated, the trial lasted nine days.

The order of the trial court allowing fees reads as follows:

"7. There is now due and owing to the plaintiff under the note and mortgage . . . the sum of $98,526.83 principal, . . . together with attorneys fees as provided in said note in the sum equal to 20% of said principal balance and interest, which sum is fair and reasonable under the circumstances of this action, together with taxable costs."

This is an equitable action to foreclose a real estate mortgage and although the trial court found the sum allowed to be fair and reasonable, it is apparent from

its findings that the amount was determined by the 20 percent provision contained in the note.

This court has held that a stipulation in a note or mortgage to pay certain attorney's fees other than taxable costs will be enforced when the amount stipulated to be paid is reasonable. *First Nat. Bank of Stillwater v. Larsen* (1884), 60 Wis. 206, 213, 19 N. W. 67.

When considering the question of reasonableness of attorney's fees on review this court has held:

"It seems to us that trial courts should not be permitted to determine the value of personal services, even though not professional or expert in nature, on the basis of personal knowledge of the trial judge, because the record would be silent as to exactly what the knowledge of the trial judge was, so it would be impossible upon appeal to have any judicial review of such a determination of value. The one exception which the authorities recognize is that a trial judge who is a lawyer may determine the value of services rendered by attorneys basing the same upon the judge's own knowledge, but in such a case on appeal the value of such service is again reviewed by judges who have expert knowledge as to the reasonable value of legal services." *Will of Gudde* (1951), 260 Wis. 79, 86, 49 N. W. 2d 906.

Therefore, reviewing the reasonable value of professional services in this case, it is our considered judgment that $16,500 is the reasonable value of such services, together with taxable costs, and the judgment entered by the trial court is so modified.

*By the Court.*—Judgment modified and, as modified, affirmed, with costs to the respondent on appeal.