# William SKEBBA, Plaintiff-Appellant,

## v.

# Jeffrey C. KASCH, d/b/a M.W. Kasch Co., Defendant-Respondent.†

### Court of Appeals

*No. 2005AP2349. Submitted on briefs August 31, 2006.*
*—Decided October 24, 2006.*

### 2006 WI App 232

(Also reported in 724 N.W.2d 408.)

† Petition to review denied 2/12/07.

On behalf of the plaintiff-appellant, the cause was submitted on the briefs of *Kelly M. Dodd* and *Daniel J. Miske* of *Petrie & Stocking, S.C.* of Milwaukee.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Franklyn M. Gimbel* and *Kathryn A. Keppel* of *Gimbel, Reilly, Guerin & Brown* of Milwaukee.

Before Wedemeyer, P.J., Kessler and Brown, JJ.

¶ 1. KESSLER, J. We conclude that the trial court misinterpreted *Hoffman v. Red Owl Food Stores*, 26 Wis. 2d 683, 133 N.W.2d 267 (1965) when it determined that under the holding of that case, it could not specifically enforce the promise which the jury found that Jeffrey Kasch had made, and on which the jury found

that William Skebba had relied. On the facts in this case, specific performance of the promise is the only remedy that will compensate Skebba for his loss because, as the jury found, the amount Kasch promised to pay is the exact measure of what Skebba lost when Kasch refused to honor the promise. Consequently, we reverse and remand for further proceedings consistent with this opinion.

## BACKGROUND

¶ 2. Skebba, a salesman, worked for many years for a company that eventually experienced serious financial difficulties. Kasch, with his brother, owned M.W. Kasch Co. Kasch hired Skebba as a sales representative, and over the years promoted him first to account manager, then to customer service manager, field sales manager, vice president of sales, senior vice president of sales and purchasing and finally to vice president of sales. Kasch's father was the original owner of the business, and had hired Skebba's father. Skebba's father mentored Kasch.

¶ 3. When M.W. Kasch Co. experienced serious financial problems in 1993, Skebba was solicited by another company to leave Kasch and work for them. When Skebba told Kasch he was accepting the new opportunity, Kasch asked what it would take to get him to stay, and noted that Skebba's leaving at this time would be viewed very negatively within the industry. Shortly thereafter, Skebba told Kasch that he needed security for his retirement and family and would stay if Kasch agreed to pay Skebba $250,000 if one of these three conditions occurred: (1) the company was sold; (2) Skebba was lawfully terminated; or (3) Skebba retired. Skebba reports, and the jury apparently found, that Kasch agreed to this proposal and Kasch promised

to have the agreement drawn up. Skebba turned down the job opportunity and stayed with Kasch from December 1993 (when this discussion occurred) through 1999 when the company assets were sold.

¶ 4. Over the years, Skebba repeatedly asked Kasch for a written summary of this agreement; however, none was forthcoming. Eventually, Kasch sold the business. Kasch received $5.1 million dollars for his fifty-one percent share of the business when it was sold. Upon the sale of the business, Skebba asked Kasch for the $250,000 Kasch had previously promised to him, but Kasch refused, and denied ever having made such an agreement. Instead, Kasch gave Skebba a severance agreement which had been drafted by Kasch's lawyers in 1993. This agreement promised two years of salary continuation on the sale of the company, but only if Skebba was not hired by the successor company and the severance agreement required a set-off against the salary continuation of any sums Skebba earned from any activity during the two years of the severance agreement. Skebba sued, alleging breach of contract and promissory estoppel.

¶ 5. The jury found there was no contract, but that Kasch had made a promise upon which Skebba relied to his detriment, that the reliance was foreseeable, and that Skebba was damaged in the amount of $250,000. The trial court concluded that, based on its reading of applicable case law, it could not specifically enforce the promise the jury found Kasch made to Skebba because there were other ways to measure damages. In motions after verdict, the trial court struck the jury's answer on damages, concluding that under *Hoffman*, because Skebba did not prove what he would have earned had he taken the job with the other company, he could not establish what he had lost by

relying on Kasch's promise and, therefore, had not proved his damages. We conclude that the trial court misread *Hoffman*.

## STANDARD OF REVIEW

¶ 6. Review of a judgment notwithstanding the verdict is a question of law that is reviewed *de novo*. *Mgmt. Computer Serv. v. Hawkins, Ash, Bapti e & Co.*, 206 Wis. 2d 158, 177, 557 N.W.2d 67 (1996). We review *de novo* a trial court's application of existing case law. *Brown v. State*, 230 Wis. 2d 355, 363–64, 602 N.W.2d 79 (Ct. App. 1999) ("[T]he application of statutory and case law to a set of facts present questions of law, which we review de novo."). Likewise, a trial court's determination of policy, like a question of law, we review *de novo*. *Butler v. Advanced Drainage Sys., Inc.*, 2006 WI 102, ¶ 19, 294 Wis. 2d 397, 717 N.W.2d 760 (Whether public policy precludes liability based on a negligence claim is also a question of law.); *Gritzner v. Michael R.*, 2000 WI 68, ¶ 27, 235 Wis. 2d 781, 611 N.W.2d 906 (Whether public policy considerations preclude liability is a question of law.).

## DISCUSSION

¶ 7. Kasch did *not* promise to pay Skebba more than Skebba would have earned at the job Skebba turned down. Kasch did *not* promise that total income to Skebba would be greater than in the turned-down job, no matter how long he remained with Kasch. Kasch *only* promised that if Skebba stayed, Kasch would pay Skebba $250,000 (the sum Skebba wanted for his retirement), at the earliest of (1) Kasch selling the business, (2) Skebba retiring, or (3) Skebba being

lawfully terminated. Skebba stayed. Kasch sold the business while Skebba was still employed by Kasch. Kasch refused to pay as promised.

## Promissory Estoppel

█

¶ 8. The purpose of promissory estoppel is to enforce promises where the failure to do so is unjust. *U.S. Oil Co., Inc. v. Midwest Auto Care Servs.*, 150 Wis. 2d 80, 91, 440 N.W.2d 825 (Ct. App. 1989). In this case, the trial court specifically relied on parts of *Hoffman* in determining that specific performance of the promise could not be awarded and in concluding that Skebba had not properly established damages. *Hoffman* was the first case in Wisconsin to adopt promissory estoppel. The facts in *Hoffman* present a long and complex history of Red Owl Food Stores inducing Mr. Hoffman to do a number of things (sell his bakery; sell his grocery store; move to another city to get larger grocery store management experience; commit to investing ever increasing sums of money in order to get a Red Owl store; buy a lot on which the store would be built, then sell the same lot; and other activities) in order to own a Red Owl grocery store to be built in the future. Mr. Hoffman did all of the things required, but finally balked at the last demand for increased capital. Although there was never a specific contract between Mr. Hoffman and Red Owl, yet Mr. Hoffman had obviously changed position in a number of ways in reliance on Red Owl's promise of a store, the court was faced with the need to provide a remedy to Mr. Hoffman and the impracticality of enforcing the promise of a store against Red Owl. In that context, the *Hoffman* court explained its adoption of a cause of

407

action based on promissory estoppel as grounded in section 90 of the Restatement of Contracts which:

> does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee. Rather the conditions imposed are:
>
> (1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee?
>
> (2) Did the promise induce such action or forbearance?
>
> (3) Can injustice be avoided only by enforcement of the promise?

*Hoffman*, 26 Wis. 2d at 698.

██

¶ 9. The *Hoffman* court explains that the first two of these requirements are facts to be found by a jury or other factfinder, while the third is a policy decision to be made by the court. *Id.* at 699; *see also Kramer v. Alpine Valley Resort, Inc.*, 108 Wis. 2d 417, 422, 321 N.W.2d 293 (1982); *Silberman v. Roethe*, 64 Wis. 2d 131, 143, 218 N.W.2d 723 (1974). In making this policy decision, a court must consider a number of factors in determining whether injustice can only be avoided by enforcement of the promise. *U.S. Oil*, 150 Wis. 2d at 91–92. The court in *U.S. Oil* adopted those considerations set forth in the Restatement (Second) of Contracts § 139(2), (1981):

> (a) the availability and adequacy of other remedies, particularly cancellation and restitution;
>
> (b) the definite and substantial character of the action or forbearance in relation to the remedy sought;

(c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence;

(d) the reasonableness of the action or forbearance; [and]

(e) the extent to which the action or forbearance was foreseeable by the promisor.

*U.S. Oil*, 150 Wis. 2d at 92.

¶ 10. The record does not indicate that the trial court here applied the considerations our supreme court announced in *U.S. Oil*. Instead, the trial court apparently relied on the *Hoffman* court's discussion of various damage theories that the court explained might be appropriate once the determination had been made to enforce the promise by application of promissory estoppel. The *Hoffman* court, discussing alternatives to specific performance of the promise to be enforced, quoted alternative damage theories from one treatise[1] and two law review articles.[2] These academics suggested, as measures of damages, the value to the plaintiff of the promised performance or the loss to the plaintiff caused by his change in position, and opined that there was no requirement that contract damages be awarded in promissory estoppel. *Hoffman*, 26 Wis. 2d at 702. The *Hoffman* court, in determining how to measure the part of Mr. Hoffman's loss caused specifically by his sale of the grocery store, concluded

[1] 1A Corbin, Contracts, § 200, p. 221; *Hoffman v. Red Owl Food Stores*, 26 Wis. 2d 683, 702, 133 N.W.2d 267 (1965).

[2] Warren A. Seavy, *Reliance on Gratuitous Promises or Other Conduct*, 64 Harv. L. Rev. 913, 926 (1951), and Warren L. Shattuck, *Gratuitous Promises – A New Writ?*, 35 Mich. L. Rev. 908, 912 (1936); *Hoffman*, 26 Wis. 2d at 702.

that only the actual loss Mr. Hoffman sustained was proper and that this loss was to be measured as the difference between the sales price and the fair market value, rather than by awarding the entire sales price as the jury had determined. *Ibid.*

¶ 11. Here, the trial court referred to *Hoffman's* reference to a 1951 Harvard Law Review article written by Seavy, which argued that "damages should not exceed the loss caused by the change of position, which would never be more in amount, but might be less, than the promised reward." *Ibid.* The trial court then concluded that the only way it could measure Skebba's change in position was by calculating the difference in what he would have earned had he taken the job he turned down, minus what he actually earned during the time he remained with Kasch. In coming to that conclusion, the trial court misunderstood the holding of *Hoffman*.

■■■■

¶ 12. A court, in fashioning a remedy, can consider any equitable *or* legal remedy which will "prevent injustice." This was recognized by the *Hoffman* court when it stated:

> In discussing remedies to be applied by courts in promissory estoppel we quote the following views of writers on the subject:
>
> "Enforcement of a promise does not necessarily mean Specific Performance. It does not necessarily mean Damages for breach. Moreover, the amount allowed as Damages may be determined by the plaintiff's expenditures or change of position in reliance as well as by the value to him of the promised performance . . . . *In determining what justice requires, the court must remember all of its powers, derived from equity, law*

> *merchant, and other sources, as well as the common law*. Its decree should be molded accordingly."

*Hoffman*, 26 Wis. 2d at 701–02 (emphasis added; citation omitted). As later commentators have noted, Wisconsin, with its landmark *Hoffman* decision, is one of a small group of states which recognizes that to fulfill the purpose of promissory estoppel—*i.e.*, prevent injustice—a court must be able to fashion a remedy that restores the promisee to where he or she would be if the promisor had fulfilled the promise.[3] In this case, Skebba performed—he remained at M.W. Kasch—in reliance on Kasch's promise to pay $250,000 to him if one of three conditions occurred. Kasch enjoyed the fruits of Skebba's reliance—he kept on a top salesperson to help the company through tough financial times and he avoided the damage that he believed Skebba's leaving could have had on M.W. Kasch's reputation in the industry. Accordingly, to prevent injustice, the equitable remedy for Skebba to receive is Kasch's specific performance promised—payment of the $250,000.

¶ 13. The record in this case, considered in light of the *U.S. Oil* tests and the jury's findings, compels specific performance of the promise because otherwise Kasch will enjoy all of the benefits of induced reliance while Skebba will be deprived of that which he was promised, with no other available remedy to substitute fairly for the promised reward. "[T]he availability and adequacy of other remedies, particularly cancellation and restitution" supports enforcement of the promise because, unlike Mr. Hoffman, Skebba did not spend money in reliance on the promise, so neither restitution nor cancellation of an obligation Skebba incurred would

---

[3] *See* Eric Mills Holmes, *Restatement of Promissory Estoppel,* 32 Williamette L. Rev. 263, 294–95 (1996).

be relevant to these facts. "[T]he definite and substantial character of the action or forbearance in relation to the remedy sought" supports enforcing the promise. Skebba's forbearance of other employment for six years from the 1993 promise the jury found occurred was both definite and substantial. "[T]he extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence," is established by the jury finding that Kasch made the promise, by no evidence that the promise was made any time other than December 1993 or early in 1994, and it is undisputed that Skebba not only turned down other employment at that time but also remained with Kasch through financially difficult times for the company until the sale of the business in 1999. "[T]he reasonableness of the action or forbearance" and "the extent to which the action or forbearance was foreseeable by the promisor" is supported by the undisputed fact that Kasch knew Skebba had another job opportunity in 1993, that Kasch believed Skebba's leaving would damage the company in the industry, and that Kasch wanted Skebba to stay. Kasch's promise achieved Kasch's objectives: Skebba stayed even though the company was in severe financial difficulties. In short, every factor this court requires to be considered supports enforcement of the promise through promissory estoppel. The trial court submitted the promissory estoppel cause of action to the jury. The jury concluded that the promise had been made, that Skebba relied on the promise to his detriment, and that such reliance was foreseeable by Kasch. The jury also found that Skebba's damages were the amount Skebba testified Kasch promised to pay Skebba if he was still employed

412

when the company was sold, that is, $250,000. The jury heard no evidence of any other damages.

██

¶ 14. Skebba's loss has nothing to do with what he might have earned on another job. Income from the rejected job was never a part of the calculus of the promise made and relied upon. Kasch never proposed to better the salary or bonus offered. Neither Kasch nor Skebba mention any discussion about a way for Kasch to retain Skebba other than the now disputed payment. Rather, Kasch's promise was to pay Skebba $250,000 if one of three conditions occurred. One triggering condition occurred—the business was sold while Skebba was still employed by Kasch. Hence, the damage calculation required by the trial court, which might be appropriate in other cases, has no reasonable application to the facts here. Rather, as noted by the *Hoffman* court, while "[e]nforcement of a promise does not necessarily mean Specific Performance," *Hoffman*, 26 Wis. 2d at 701, specific performance is neither precluded nor disfavored as a remedy for promissory estoppel; preventing injustice is the objective.[4] In this case, specific performance *is* the *necessary* enforcement mechanism to prevent injustice for Skebba's reliance on the promise the jury found Kasch had made to him.

---

[4] *See* 1A Corbin on Contracts, § 200; Holmes, *supra* note 3, at 498–99; *c.f. Janke Constr. Co., Inc. v. Vulcan Materials Co.*, 386 F. Supp. 687 (W.D. Wis. 1974) (specific performance, *i.e.* supplying the promised pipe, was not an adequate remedy for Vulcan's breach of its promise because Janke had had to already purchase the pipe from another supplier and the court determined that the remedy that would prevent injustice was the difference in the price of the pipe which Janke had to purchase from the price quoted by Vulcan).

¶ 15. Accordingly, we conclude that the trial court erred in holding that specific performance was not available on this promissory estoppel claim. We further conclude that the trial court erred in its application of *Hoffman* to the facts of this case. We reverse and remand for further proceedings consistent with this opinion.

*By the Court.*—Order reversed and cause remanded.