COURT OF APPEALS
DECISION
DATED AND FILED

July 13, 2022

Sheila T.3 Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No.    **2021AP744**

STATE OF WISCONSIN

Cir. Ct. No.  2020CV29

IN COURT OF APPEALS
DISTRICT III

---

ADVANCED TRUCKING & SERVICES, LLC,

 PLAINTIFF,

 V.

THE HANOVER INSURANCE COMPANY,

 DEFENDANT,

DAKOTA INTERTEK CORP.,

 DEFENDANT-THIRD-PARTY
 PLAINTIFF-APPELLANT,

 V.

WASTE MANAGEMENT OF WISCONSIN, INC.,

 THIRD-PARTY DEFENDANT-RESPONDENT.

---

APPEAL from an order of the circuit court for Kewaunee County: KEITH A. MEHN, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Gill, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Dakota Intertek Corporation ("Dakota") appeals a circuit court order dismissing its third-party complaint against Waste Management of Wisconsin, Inc. ("Waste Management"). Dakota argues that the court erred in determining that Dakota failed to state a claim for promissory estoppel. We conclude that Dakota failed to allege facts that plausibly suggest that Waste Management made an unequivocal promise to accept disposal services at a particular price. Accordingly, we affirm the order dismissing Dakota's third-party complaint.

## BACKGROUND

¶2 This appeal arises from a third-party complaint that Dakota filed as an intervenor in a lawsuit brought by Advanced Trucking & Services, LLC ("Advanced Trucking"), against The Hanover Insurance Company ("Hanover"). In the complaint that initiated this lawsuit, Advanced Trucking alleged that it was a subcontractor on a demolition project that Dakota had contracted to perform for the City of Kewaunee. As part of this project, Dakota obtained a surety bond from Hanover that made Hanover jointly and severally liable for the costs of carrying out the demolition project. Advanced Trucking further alleged that it had performed services for the demolition project, but that Dakota had failed to pay it in full for those services. Advanced Trucking then demanded payment from Hanover under the surety bond. When Hanover failed to respond, Advanced Trucking filed a complaint against Hanover, seeking payment of the balance owed plus indemnification for its reasonable attorney fees

¶3 Dakota filed a motion to intervene in the lawsuit between Advanced Trucking and Hanover. In that motion, Dakota stated that it "vehemently dispute[d] the allegations made in [Advanced Trucking's] [c]omplaint" and that Dakota had legal claims it wished to assert against Advanced Trucking. Dakota argued that "its interests may be impeded or impaired if it is not allowed to become an intervenor defendant in this lawsuit." The circuit court granted Dakota's motion to intervene.

¶4 Approximately four months after the circuit court granted Dakota's motion to intervene, Dakota filed a third-party complaint against Waste Management asserting a claim for promissory estoppel. Dakota's third-party complaint alleges that, in a series of communications, Waste Management provided a quote for the cost of disposing of debris from the demolition project and that Dakota incorporated this quote into its winning bid for the project. Dakota further alleges that Waste Management subsequently refused to honor its quote and receive project debris, forcing Dakota to use an alternate disposal option at a much higher cost.

¶5 Waste Management filed a motion to dismiss Dakota's third-party complaint, arguing that Dakota had failed to state a claim for promissory estoppel. Specifically, Waste Management argued that promissory estoppel required a clear and unconditional promise, whereas the quote it provided to Dakota "was contingent on the satisfaction of several Special Conditions unambiguously set forth in the [q]uote." To support its motion, Waste Management attached the pricing schedule that it had provided to Dakota: a one-page document with a

section entitled "Special Conditions."[1] The "Special Conditions" section includes the following language: "Waste must meet acceptability criteria at the site and comply with local, state and federal regulations, as well as the site[']s permit requirements. Pricing is contingent upon site and/or sample evaluation and approval. Customers must have a current Waste Management Industrial Service Agreement."

¶6 In its brief opposing Waste Management's motion to dismiss, Dakota pointed to two email communications that it had received from Waste Management. Dakota contended that these communications constituted unconditional promises because they contained "no language suggesting or even hinting that the promises are conditioned on some other precedent act." Dakota further characterized the Special Conditions in Waste Management's pricing schedule as "superfluous language."

¶7 As part of its argument for why Waste Management's alleged promises were not conditional but were instead "direct, clear, and specific," Dakota asserted in its brief opposing the motion to dismiss that "Waste Management visited the [p]roject site, investigated the site, attended pre-bid meetings, made affirmative statements at the pre-bid meetings, and confirmed its promises to the bidders in written form."

---

[1] Waste Management argued that the circuit court was permitted to consider this pricing schedule under the "incorporation-by-reference doctrine" because Dakota's complaint referred to this document. *See Soderlund v. Zibolski*, 2016 WI App 6, ¶37, 366 Wis. 2d 579, 874 N.W.2d 561 (2015) (A court "may consider a document attached to a motion to dismiss or for judgment on the pleadings without converting the motion into one for summary judgment if the document was referred to in the plaintiff's complaint, is central to his or her claim, and its authenticity has not been disputed."). Dakota did not object to the court's consideration of Waste Management's pricing schedule, nor does Dakota challenge our consideration of that document on appeal.

¶8 In a written decision and order, the circuit court explained that it would only consider the communications specified in Dakota's third-party complaint, whereas "[f]acts not [pled] but addressed in Dakota's brief are not being considered." The court then rejected Dakota's argument that any of the email communications from Waste Management constituted an unequivocal promise. Specifically, the court determined that the pricing schedule attached to Waste Management's motion to dismiss was "the operative document," and it further found "that the pricing schedule was expressly contingent upon the conditions set forth in the pricing schedule itself." Because the court rejected Dakota's argument that Waste Management had made "a clear and unequivocal promise … to Dakota regarding pricing," the court concluded that Dakota had failed to state a claim for promissory estoppel. The court therefore dismissed Dakota's third-party complaint without prejudice.

¶9 Dakota now appeals. Additional facts are provided below as necessary.

## DISCUSSION

¶10 "A motion to dismiss for failure to state a claim tests the legal sufficiency of the complaint." *Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶19, 356 Wis. 2d 665, 849 N.W.2d 693 (citation omitted). At the pleading stage, "[p]laintiffs must allege facts that plausibly suggest they are entitled to relief." *Id.*, ¶31. When reviewing a motion to dismiss, "we accept as true all facts well-pleaded in the complaint and the reasonable inferences therefrom." *Id.*, ¶19. "However, a court cannot add facts in the process of construing a complaint." *Id.* "Whether a complaint states a claim upon which relief can be granted is a question

of law for our independent review; however, we benefit from discussions of the … circuit court." *Id.*, ¶17.

¶11 A claim for promissory estoppel has three elements: "(1) Was the promise one which the promisor should reasonably expect to induce action or forbearance of a definite and substantial character on the part of the promisee? (2) Did the promise induce such action or forbearance? (3) Can injustice be avoided only by enforcement of the promise?" *Skebba v. Kasch*, 2006 WI App 232, ¶8, 297 Wis. 2d 401, 724 N.W.2d 408 (quoting *Hoffman v. Red Owl Stores*, 26 Wis. 2d 683, 698, 133 N.W.2d 267 (1965)). To succeed on a claim for promissory estoppel, a plaintiff must establish an unconditional promise by the defendant. *See* *Winnebago Homes, Inc. v. Sheldon*, 29 Wis. 2d 692, 701, 139 N.W.2d 606 (1966) (explaining that the plaintiff's claim failed on the merits because the defendant's "so-called promise … may not fairly be construed to constitute an unqualified promise" due to additional conditions).

¶12 In this appeal, Dakota again argues that Waste Management "made clear promises to Dakota which Dakota relied on to its detriment." We start by examining the communications that Dakota alleges are promises. Dakota begins by directing us to "Waste Management's first written communication to the bidders," an email sent on Monday, April 16, 2018. According to Dakota's third-party complaint, that first email states:

> In the [pre-bid] meeting, Ayres[2] indicated that there is [sic] two [Waste Management] profiles completed for this project (1. C&D material containing Non-friable Asbestos & lead/PCB contaminated paint[,] 2. C&D material

---

[2] This email appears to refer to Ayres Associates, Inc., an engineering firm that was working for the City of Kewaunee.

> containing Friable asbestos & lead/PCB contaminated paint) and the only item needed to finalize the profiles is the winning bidder's billing information. I will release final disposal numbers on Wednesday morning (Figure +/- $32/ton if you are looking for bonding information).

The circuit court determined that "[t]here is not enough information contained in this email to conclude that it is a clear and unequivocal promise." Instead, the court found that the April 16 email was "a precursor to another email to be sent later, which would provide the pricing schedule."

¶13 Dakota nonetheless points to Waste Management's statement that "*the only item needed to finalize the profiles is the winning bidder's billing information.*" Dakota argues that this statement in the April 16, 2018 email was a promise and that "there was no condition to this promise." We fail to see any promise in this particular statement. Instead, we agree with the circuit court that there is not enough information in the emphasized phrase—or, for that matter, in the rest of the email—to conclude that Waste Management was making any promise to Dakota or any other bidders in the email. To the contrary, the email expressly stated that the disposal numbers would be released on Wednesday morning. Thus, the court correctly viewed the April 16 email not as a promise to provide disposal services at a certain price, but rather as a precursor to the pricing schedule that Waste Management planned to release shortly thereafter.

¶14 Next, Dakota directs us to Waste Management's second email, dated Wednesday, April 18, 2018. According to Dakota's third-party complaint, the April 18 email states:

> Attached is the pricing schedule for this project. Couple of key points below.
>
> 1. The all in price for NON-friable ACM including debris containing lead and PCB paint—$30.00/ton including fees

7

and a minimum of 3/tons per load. This should be the vast majority of your landfilled material from this project.

2. The all in price for friable ACM including debris containing lead and PCB paint—$78.00/ton including fees and a minimum of 3/tons per load. You may or may not need this profile, however, it is available to you and included in your one-time fee of $100.00 for all profiles submitted.

3. Ridgeview will accept the clean brick and crushed clean concrete (6" pieces or smaller) at a reduced all in rate of $9/ton. This profile would also be included in your one-time profile fee.

The circuit court determined that "[t]his e-mail provides information but is a summary of the operative document, which is the pricing schedule." Accordingly, "[t]his e-mail cannot be read on its own … and is not a clear and unequivocal promise without looking at the provisions of the pricing schedule."

¶15 Dakota argues, without elaboration, that "this second written communication doubled-down on the first communication." But Dakota does not develop any argument to suggest that the circuit court mischaracterized this April 18, 2018 email or overlooked key language. Rather, we agree with the court that this second email does not, on its own, constitute an unconditional promise independent of the attached pricing schedule.

¶16 Finally, we turn to the pricing schedule itself, which Dakota argues "further confirmed Waste Management's promise to accept demolition debris at its landfill at the agreed upon disposal rates." As explained above, the third-party complaint does not contain any factual allegations that plausibly suggest that this pricing schedule confirmed a prior quote or agreement by Waste Management to provide disposal services at a specific rate. Instead, Dakota alleges, in conclusory fashion, that this pricing schedule is a letter from Waste Management "confirming

its quote on the Project." "[I]t is important for a court considering a motion to dismiss to accurately distinguish pleaded facts from pleaded legal conclusions." *Data Key Partners*, 356 Wis. 2d 665, ¶19. In the absence of any pleaded facts to show that Waste Management had made a promise about its pricing prior to issuing this pricing schedule, Dakota's conclusory allegation that Waste Management's pricing schedule confirmed a prior quote does not enable its complaint to withstand a motion to dismiss. *See id.*

¶17 Dakota urges us to consider the first sentence of the pricing schedule, which states: "Waste Management of Wisconsin is pleased to provide you with pricing for disposal per your request." Dakota appears to be arguing that this sentence confirmed an existing promise. We have already rejected the notion that there was any existing promise for Waste Management to confirm. Instead, this opening sentence simply introduces the pricing information that follows. The circuit court concluded that the pricing information that follows the opening sentence did not create an unconditional promise because the pricing schedule also sets forth "Special Conditions." These Special Conditions include:

> Waste must meet acceptability criteria at the site and comply with local, state and federal regulations, as well as the site[']s permit requirements.
>
> Pricing is contingent upon site and/or sample evaluation and approval.
>
> Pricing is based solely on the information available at this time.
>
> Additional information may be required prior to approval.

¶18 Dakota urges us to overlook this section of the pricing schedule, characterizing these Special Conditions as mere "fine print." Waste Management points out that the Special Conditions are printed in the same size and font as all of

9

the other information in the pricing schedule. As such, the Special Conditions take up "about one-third" of the one-page pricing schedule. We agree with Waste Management that these Special Conditions were prominently set forth in the pricing schedule and therefore cannot be fairly characterized as "fine print."

¶19 Turning to the substance of the Special Conditions, Dakota argues that "[t]hese are not special conditions at all." Instead, Dakota contends that the bidders reasonably believed that Waste Management already had all of the information that it needed to provide an unconditional quote. According to Dakota, "it would be nonsensical and unreasonable" for Waste Management to issue a pricing schedule "without having already analyzed the debris." Dakota makes a similar argument in its reply brief, describing the Special Conditions as "boilerplate, superfluous language included in all of [Waste Management's] quotes" and further contending that "Waste Management's actions … eliminated this boilerplate language."

¶20 The problem with this argument is that it depends on facts that were not alleged in Dakota's third-party complaint. "[A] court cannot add facts in the process of construing a complaint." *Data Key Partners*, 356 Wis. 2d 665, ¶19. Dakota does not point to any factual allegations in its complaint from which the circuit court could have reasonably inferred that Waste Management's pricing was not contingent on the Special Conditions that were expressly included in the pricing schedule. To the contrary, the only reasonable inference from phrases such as "Waste must meet acceptability criteria at the site" and "Pricing is contingent upon site and/or sample evaluation and approval" is that Waste Management's disposal prices were expressly conditioned upon these additional

factors.[3]  Because the facts as pled do not support Dakota's allegation that Waste Management made a clear and unconditional promise, Dakota has not shown a plausible entitlement to relief.  *See id.*, ¶31.

¶21     Nor do the decisions cited by Dakota persuade us to treat Waste Management's conditional pricing schedule as sufficient to give rise to a claim for promissory estoppel.    Specifically, Dakota relies on two Wisconsin cases to support its argument that its third-party complaint properly stated a claim for promissory estoppel—*Skebba* and *Hoffman*.   Neither of these cases addresses whether a conditional promise can be a basis for a claim of promissory estoppel.

¶22     In *Skebba*, a jury found that the defendant, Kasch, had made a promise to the plaintiff, Skebba, to induce Skebba to forgo other employment opportunities in order to continue working at the company that Kasch owned. *Skebba*, 297 Wis. 2d 401, ¶¶1-3.   Specifically, Kasch promised that if Skebba stayed with the company, Kasch would pay Skebba $250,000 if the company was sold, if Skebba was lawfully terminated, or if Skebba retired.  *Id.*, ¶3.   Skebba agreed to stay with the company until Kasch sold it several years later, but Kasch refused to pay Skebba $250,000.  *Id.*, ¶¶3-4.

¶23     The jury awarded Skebba $250,000 in damages, but the circuit court struck this award.  *Id.*, ¶5.  The court believed that Skebba's damages needed to be measured "by calculating the difference in what he would have earned had he taken the job he turned down, minus what he actually earned during the time he remained with Kasch."  *Id.*, ¶11.  Because Skebba did not prove what he would

---

[3] Dakota's third-party complaint does not allege any facts to show that the Special Conditions were met, nor does Dakota make this argument on appeal.

have earned if he had taken other employment, the court concluded that Skebba had failed to establish damages. *Id.*, ¶5. We reversed, explaining that the court misunderstood the remedy for Skebba's successful promissory estoppel claim. *Id.*, ¶¶11-12. Because Kasch had promised to pay Skebba $250,000 upon the sale of the business, we concluded that "the equitable remedy for Skebba to receive is Kasch's specific performance promised—payment of the $250,000." *Id.*, ¶12.

¶24 Thus, *Skebba* addresses the proper remedy for promissory estoppel when a defendant has made a clear promise on which the plaintiff has relied. *Skebba* does not, however, help Dakota establish that a conditional promise can give rise to a cognizable claim for promissory estoppel.

¶25 *Hoffman* is similarly unhelpful to Dakota. In *Hoffman*, our supreme court determined that there was ample evidence to support the jury's verdict "with respect to the promissory representations made by Red Owl." *Hoffman*, 26 Wis. 2d at 697. The court explained,

> The record here discloses a number of promises and assurances given to Hoffman by [the defendants] upon which plaintiffs relied and acted upon to their detriment.
>
> Foremost were the promises that for the sum of $18,000 Red Owl would establish Hoffman in a store. After Hoffman had sold his grocery store and paid the $1,000 on the Chilton lot, the $18,000 figure was changed to $24,100. Then in November, 1961, Hoffman was assured that if the $24,100 figure were increased by $2,000 the deal would go through. Hoffman was induced to sell his grocery store fixtures and inventory in June, 1961, on the promise that he would be in his new store by fall. In November, plaintiffs sold their bakery building on the urging of defendants and on the assurance that this was the last step necessary to have the deal with Red Owl go through.

*Id.* at 696-97. Notwithstanding these promises and assurances, the defendants argued that promissory estoppel did not apply because an "agreement was never

reached on essential factors necessary to establish a contract." *Id.* at 697. The court rejected this argument, holding that promissory estoppel "does not impose the requirement that the promise giving rise to the cause of action must be so comprehensive in scope as to meet the requirements of an offer that would ripen into a contract if accepted by the promisee." *Id.* at 698.

¶26     Thus, *Hoffman* establishes that promissory estoppel does not require that a promise contain the same level of detail found in an enforceable contract. *Hoffman* does not, however, address whether an alleged promise that is expressly contingent on specified conditions is sufficient to give rise to a claim for promissory estoppel.

¶27     In contrast, Waste Management relies on authority that directly addresses whether a conditional agreement can give rise to a claim for promissory estoppel. In particular, Waste Management calls our attention to *Lakeshore Commercial Finance Corp. v. Bradford Arms Corp.*, 45 Wis. 2d 313, 318, 173 N.W.2d 165 (1970), in which our supreme court reviewed a circuit court's determination that promissory estoppel did not apply to a lender's conditional agreement to release a mortgage. Our supreme court agreed with this analysis, explaining that the lender's alleged promise to release its mortgage was expressly contingent on further conditions. *Id.* at 322. As such, the court determined that there was "no issue about [the lender] failing to keep its promise." *Id.*

¶28     Dakota asserts that *Lakeshore* is distinguishable for two reasons. First, Dakota argues that "[t]here was a clear and definite condition included in the promise" made by the lender in *Lakeshore*. In contrast, Dakota contends that "[t]here was no conditional 'IF' involved in the transaction" with Waste Management, but rather "clear and unequivocal promises." We have already

rejected this argument as patently inconsistent with Waste Management's pricing schedule, which expressly sets forth several "Special Conditions" that needed to be met.

¶29    Second, Dakota argues that no third parties were involved in the transaction in *Lakeshore*, so "the parties were free to renegotiate amongst themselves at any time." In contrast, the present case involves a third party, the City of Kewaunee, which accepted Dakota's bid that in turn was based on Waste Management's pricing. Therefore, "[t]here was no renegotiating." Dakota argues that the presence of a third party means "[i]t would be unjust to allow the reneging party to walk away from its promise while the original promisee is left to suffer because of its reasonable reliance."

¶30    Dakota's argument about the presence of a third party appears to relate to the third element of promissory estoppel: whether "injustice [can] be avoided only by enforcement of the promise." *Skebba*, 297 Wis. 2d 401, ¶8 (citing *Hoffman*, 26 Wis. 2d at 698). But even assuming that Dakota is correct that the involvement of a third party makes it more likely that a plaintiff can demonstrate an injustice, promissory estoppel still depends on the existence of a promise. Dakota offers no authority to suggest that a conditional agreement is sufficient to state a claim for promissory estoppel when a third party is involved. In sum, nothing in Dakota's brief persuades us that an alleged promise that is accompanied by express conditions and contingencies is a sufficient basis for a promissory estoppel claim, even when a third party is involved.

¶31    For the foregoing reasons, we conclude that Dakota has failed to state a claim for promissory estoppel in the absence of a clear and unconditional promise by Waste Management. *See Data Key Partners*, 356 Wis. 2d 665, ¶31

(explaining that "the sufficiency of a complaint depends on substantive law that underlies the claim made"). We therefore affirm the circuit court's order dismissing Dakota's third-party complaint against Waste Management without prejudice.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)5. (2019-20).